## PROSSER v. HENDERSON.

1. To justify an inference of fraud, from the price given for a slave, in a purchase from an insolvent man, it should be clearly inadequate—evidently below the market price. The fair interpretation of the terms, " value, or about the value," of a slave, is not much above or below the market price.

2. When a title is acquired *bona fide* to a slave, it is not a badge of fraud, that the purchaser suffers him to go into the possession of a former owner of the slave, for a short time, although he is insolvent; he having parted with the title, and the slave having been out of his possession for two years previous.

3. A party has no right to ask a new, and substantive charge to the jury, on their returning into court for an explanation of the charge previously given, or for the purpose of having it again repeated.

Prosser v. Henderson.

Error to the Circuit Court of Chambers.

TRIAL of right of property, between the defendant in error as claimant, and the plaintiff in error as plaintiff, in an execution against John A. Wicker, which was levied on a negro man named Bob.

Upon the trial it appeared in evidence, that about the 27th of October, an execution amounting to about $427, in favor of the Bank at Montgomery, issued against Wicker, and one Brooks as his surety, and was levied on the slave in controversy, then the property of Wicker, who applied to Brooks to aid him in settling it. Wicker furnished about $90, and Brooks the residue, and satisfied the execution, the latter taking from Wicker a bill of sale of the slave for the consideration as expressed in it of $427, and with the understanding, that Wicker might redeem him in a short time. The negro remained in Wicker's possession, and the bill of sale was not recorded.

The slave remained in possession of Wicker, until February, 1843, when he was again levied on by execution in favor of one Thrash, for between one and two hundred dollars. Brooks discharged this execution, and took the negro into his possession, who was proved to be worth at least $600. Subsequent to this time, Wicker proposed to redeem the negro from Brooks, but he refusing to permit him to do so, on the 3d March, 1845, the former filed his bill in chancery to compel the redemption of the slave. The bill was not answered by Brooks, and on the 22d April, 1845, Brooks, Wicker and the claimant met together, and claimant said he wanted Brooks and Wicker to settle the chancery suit, and all their differences. Brooks claimed to have advanced for Wicker $475, and to get out of law, offered to give Wicker $25 and keep the negro, and to take from him $500 for the slave, he (Wicker) paying the costs of suit. Wicker refused to accede to either proposition. The claimant then expressed his opinion that the offers were fair, and that he would take the negro if Wicker would agree to it, which he did. The claimant then paid the purchase money to Brooks, and received from him a bill of sale for the slave, and by his directions Brooks sent the slave the next day to Wicker's, who

continued there, until levied on in this case. Wicker afterwards dismissed the bill at his own costs. It was also proved that Henderson, the claimant, was related by marriage to Wicker, and that in 1845, the latter was notoriously insolvent.

The claimant also proved, that at this time the negro was worth from $500 to $550, that he borrowed money to pay Brooks, and permitted the slave to remain with Wicker until harvest, as he had no use for him until then.

The court, after several charges which were not excepted to, further charged the jury, that if they found from the testimony that the sale from Wicker to Brooks was fair, and in good faith, and there was no secret trust for the benefit of Wicker, and if they further found that the claimant purchased the slave from Brooks, as shown in the proof, and paid his own money in good faith, and there was no secret trust for the benefit of Wicker; and if they further found, that the claimant paid the value, or about the value of the slave, then the claimant's purchase vested in him a good title, notwithstanding Wicker may have been insolvent, the claimant may have known it, and the slave may have gone into Wicker's possession, and remained there as shown in the proof; to which the plaintiff excepted.

After the jury had retired and deliberated about twenty-four hours, they returned into court, and requested the court again to charge, or rather to repeat the charge formerly given, in regard to the claimant's purchase. The court proceeded to repeat the charge heretofore set out, but gave no additional charge. The plaintiff then requested certain charges to be given, which the court declined to allow considered of, or certify. These charges so moved for, are found in a bill of exceptions afterwards certified by the court, but from the view taken of them by the court, need not be here stated.

These matters are all assigned as error.

S. F. RICE, for plaintiff in error, in support of his right to ask the explanatory charges, cited 2 Ala. 694; 9 Id. 56, 63; 1 Id. 18; 5 Id. 241; Collins v. Fowler, 10 Id. 858; 8 Porter, 546; 1 Ala. 506; 4 Id. 571; 6 Id. 881.

To show that a bill of sale absolute on its face, may be shown to be a mortgage, or upon trust for purposes of fraud, he cited 6 Ala. 598; 1 Porter, 328; 2 Id. 433.

That the facts in this case were sufficient to establish a fraudulent interest, he referred to 5 Ala. 531; 8 Id. 656; Id. 105; 7 Id. 269, 927; 5 Id. 324; 3 N. H. R. 415.

That the facts and circumstances attending the purchase by the claimant, demonstrated its fraudulent character, 6 Greenleaf R. 289; 8 Ala. 656; 4 Id. 203; 4 N. H. 309; 1 Ala. 37.

GUNN, contra, in support of the charge given by the court, cited 9 Ala. 382; 8 Id. 104, 656; 9 Id. 663; 3 Stew. 243; 1 Porter, 328.

To establish that the court could not be compelled to charge after the trial, and upon the return of the jury, he relied on 5 Vermont R. 136; 2 Id. 464; 1 Ala. 18; 2 Id. 694; 5 Littell, 221; 3 Hawks, 308.

ORMOND, J.—The charge of the court appears to us to be entirely unexceptionable. The *bona fides* of all the transactions between these parties, commencing with the first loan of money from Brooks to Wicker, down to the purchase by the claimant, were all left to the jury, and it was only in the event that they found that there was no secret trust in favor of the debtor, Wicker, and that the claimant purchased fairly, in good faith, with his own money, and that he gave a fair price for the slave, purchasing for himself, and without any secret trust in favor of Wicker, that he obtained a good title. The points of this charge principally objected to, are the expression that they must find that the claimant gave the value, or about the value of the slave. We consider this precisely equivalent to the terms fair price. The value of a slave must of necessity rest in opinion, about which individuals will differ, as they did in this case. To justify an inference of fraud, from the price given for a slave in a purchase from an insolvent man, it should be clearly inadequate—evidently below the market value or price. The fair interpretation of the terms " the value, or about the value," is, not much above or below the market price. It is impossible,

that the jury could have been misled by these expressions; they are, in our opinion, sufficiently definite and precise, and if in the opinion of the counsel for the plaintiffs, they required explanation, it should have been demanded at the time.

It is further objected, that there was no circumstances, or fact in evidence, that explained the incongruity of the slave going into the possession of Wicker, after the purchase by the claimant. It is certainly the law of this court, settled by numerous cases, that where the vendor of personal property, continues in possession after an absolute sale, it is a badge of fraud, and that the vendor must satisfactorily explain, why it was, that the possession did not accompany the title. But in this case it must be remembered, that Wicker had been out of possession more than two years before the purchase by the claimant, the possession being all this time in Brooks, in whom was also the legal title, and the court expressly required the jury to find, that this title was in Brooks *bona fide*, and was fairly acquired by the claimant, to vest in him a valid title, and if so, that his title was not impaired by his knowledge that Wicker was insolvent, or by his permitting him to have the use of the slave. If this is not a correct legal proposition, then an insolvent man is cut off from all the charities of life. No one can safely buy property which had ever belonged to him, or do him an act of kindness. The argument urged here, and the cases referred to, are all to establish the want of good faith in the transaction, which resulted in the purchase by the claimant, but these are all matters upon which the jury have passed, of which they are not only the appropriate but the best judges, and about which the plaintiff has not thought proper to present any question for the revision of this court. In our opinion, the charge as given, presented the question in a fair, and intelligible point of view to the jury, and if it was considered ambiguous, or not sufficiently explicit, an explanatory charge should have been asked.

The refusal of the court to give the additional charges moved for, when the jury returned into court, is not a matter which can be here assigned as error. The right which

is secured to parties to except to any decision of the court, is confined by the express terms of the statute, to "exceptions taken on the trial of the cause." [Clay's Dig. 307, § 5.] If the jury return into court, and desire further, or explanatory charges, doubtless, if given, they may be excepted to, and additional or explanatory charges asked for, and if refused also excepted to. In this case, the court merely repeated its former charge, about which the jury had probably differed in opinion. This did not authorize the counsel on either side, to open the trial of the cause, by demanding new and substantive charges to be given. If this can be done, we can see no reason why the jury should not be required to be brought again into court, at any time before they have rendered their verdict, and additional charges required to be given by the court. Our conclusion is, that the right here insisted on does not exist.

Let the judgment be affirmed.