THE FIRST NATIONAL BANK OF FRANKFORT, INDIANA, *v.* SMITH ET AL.

[No. 18,252.   Filed February 15, 1898.]

FRAUDULENT CONVEYANCE.— *Inadequate Consideration.— Innocent Purchaser.—Husband and Wife.—Equity of Wife.—*A conveyance of real estate worth $8,000.00 for a consideration of $650.00, made by a husband to his wife to defraud his creditors will be set aside as fraudulent, upon such conditions as will protect the wife's interests therein, in an action by *bona fide* creditors of the husband, although the wife had no actual knowledge of her husband's fraud.

From the Clinton Circuit Court.   *Reversed.*

*John C. Farber*, for appellant.

*J. C. Rogers* and *W. R. Moore*, for appellees.

HOWARD, C. J.—This was an action by appellant upon two promissory notes; also to set aside certain deeds made in fraud of the rights of appellant and other creditors, and to subject the lands conveyed to the payment of the debt due appellant. The complaint is in two paragraphs, the first counting on a note for $742.00, given January 28, 1896, by the appellees John A. Smith and John Enright, and the second on a note for $1,000.00, given February 15, 1896, by the same appellees. It is alleged that at the dates of execution of the notes, and for many years prior thereto, the appellee John Enright was the owner in fee simple

of the lands in controversy, described in the complaint. It is then further alleged: "That on the 25th day of March, 1896, without any consideration, and for the purpose of and with the intent to cheat, hinder, and delay his creditors, including the plaintiff herein, and to avoid the payment of said note [notes], the said defendant John Enright conveyed said real estate to his wife, Ann Enright, by deed, for a colorable consideration of $6,830.00, but for no actual consideration whatever; and plaintiff avers that at the time of such conveyance, prior thereto, and at all times since said conveyance, and now, the said defendant John A. Smith was and is wholly insolvent, and that no part of said indebtedness could be made by execution against him; which facts were fully known to said John Enright, Ann Enright, and Levi H. Enright at the date of such conveyance, and at the time of the conveyance to Levi H. Enright hereinafter mentioned. That the defendant John Enright did not retain sufficient property with which to pay the said claim of plaintiff, and that he had not at the time of such conveyance, nor has he since had, nor has he now, sufficient other property subject to execution to pay his debts. Plaintiff further says that afterwards, to wit, on the 2d day of June, 1896, the said defendant Ann Enright, her codefendant and husband, John Enright, joining with her, executed and delivered to the defendant Levi H. Enright a deed of conveyance for the real estate described herein as being owned by the defendant John Enright; that Levi H. Enright is a son of John and Ann Enright, and was fully acquainted with all the facts and circumstances herein set forth, and had notice of the fraudulent transfer of said real estate from John Enright to Ann Enright, and of the fact of plaintiff's claim against said John Enright, and that the same was unpaid; that such conveyance was

so made to Levi H. Enright for a colorable consideration of $5,400, but was, in fact, for no actual consideration, but was so executed and delivered in furtherance of the fraudulent intent on the part of John Enright, Ann Enright, and Levi H. Enright of cheating, hindering, and delaying the creditors of said John Enright, and of preventing the collection of plaintiff's claim."

The court, having heard the evidence, found for the appellant against the appellees John A. Smith and John Enright on the notes in suit, and for the appellees Ann Enright and Levi H. Enright for their costs; and over a motion for a new trial judgment was entered in accordance with such finding.

It is assigned as error that the court overruled the motion for a new trial. The chief reason urged in favor of a reversal is that the decision is contrary to law and to the evidence. That the evidence shows that John Enright made the deeds in question with the intent to prevent appellant from collecting its debt does not seem to be seriously controverted. The deeds were plainly fraudulent as to him.

In 2 Thompson Trials, section 2016, it is said that one badge of fraud consists in "the transfer by a debtor in failing circumstances of all or most of his property to his near relations." And in 2 Rice Ev. 955, the author says that slight evidence will be sufficient proof of fraudulent intent between parties who occupy confidential relations. In *Hoffman* v. *Henderson*, 145 Ind. 613, it was held, citing Bump. Fraud Conv. (2d ed.) 565, that evidence of other fraudulent transactions at or about the time of the transfer in controversy is also competent to prove the fraudulent intent of the debtor; and that there is, moreover, a probable connection in a series of sales nearly at the same time, the result of which is to strip a man of his available property.

In the case before us it is not questioned that John Enright, besides the two deeds in controversy, executed about the same time deeds to his other children, without consideration, for other lands, and that by all his conveyances made at and near the time he was left without any property from the sale of which his debt to appellant could be paid. Indeed, he practically admits this himself. Asked as to why he gave away 200 acres at that time, he answered: "Well, to my children, I must admit I gave the land away." Asked again why he did it, he said, "Well, that is the question now." "Well, I wanted them to have the farm." And when the question was whether he wanted them to have it rather than his creditor, the appellant, he answered: "Well, I can't answer that question at all." "Well, I don't know."

Whether the evidence shows the deeds to have been fraudulent as to the appellee Ann Enright, is a more difficult question. It is alleged in the complaint that the deed to her and that to their son, Levi, were without consideration. It is also there alleged that at the time of said conveyance to her by her husand, as well as at the time of the conveyance by her and her husband to their son, Levi, the facts in relation to these transfers, which include the fact of her husband's "intent to cheat, hinder, and delay his creditors," were "fully known" to her, as well as to her said husband and son. If either of these allegations, the want of consideration for the deeds, or the knowledge on her part of the fraud about to be practiced on appellant and other creditors of her husband, were established by the evidence, then the law would impute fraud also to her, and the deeds should be set aside.

The evidence shows that the land was held in John Enright's name for nearly twenty-two years before he conveyed it to his wife, and that there was no con-

sideration then paid to him for the deed to her.   She
even testified that she was not present when the deed
to her was executed, and that she did not know any-
thing about her husband having excuted a deed to
her until he handed it to her.,   In the light of this
testimony, the deed to Ann Enright would look very
much like a voluntary conveyance.

If the deed to Ann Enright was fraudulent as to
her, then the deed by her and her husband to their
son, Levi, was confessedly fraudulent also, and that as
to all the parties, for it is admitted that there was no
consideration whatever for the deed to him.

On January 28, 1896, the day on which the first of
the renewal notes in suit was executed, John Enright
filed in the circuit court, as replevin bail, in a cause
there pending, his affidavit that he was worth, in unin-
cumbered real estate, over and above all indebtedness,
the sum of ten thousand dollars.   So far as the public
records then showed, he might well take this oath.
Those records represented him to be the owner in fee
simple of 400 acres of land, with no lien whatever
standing against it; and it is admitted that this land
was then worth $40.00 an acre, except sixty acres,
which was worth $35.00 an acre; in all about
$16,000.00 worth of unincumbered real estate.   In less
than two months he had completely stripped himself
of his property.   On March 25, he deeded to his wife
200 acres without consideration then paid.   On the
same day he and his wife deeded to one daughter 140
acres additional, admitted to be wholly without con-
sideration.   Again, on the same day, there was placed
on record a deed to another daughter for the remain-
ing 60 acres.   It is shown that this last deed was
executed by him, without his wife joining, on the 27th
of November previous, on which day was also exe-
cuted by him alone a deed to the other daughter for

the 140 acres, redeeded to her by him and his wife on March 25, as already 'stated. All the deeds to the daughters were wholly without consideration, except what is shown by the relationship of the parties.

Counsel may well admit, as they practically do, that this whole series of transactions was tainted with fraud. But it is insisted that Ann Enright, the wife, was not a participant in the fraud, that she knew nothing of the false representations made by her husband, or that he was indebted to the appellant or to any one else, or that any one had given her husband credit by reason of his ownership of the land, as shown upon the public records. It must be confessed that counsel for appellant has not pointed out any positive or satisfactory evidence in opposition to the claim of innocence so made in favor of Ann Enright, nor have we been able to find any such evidence, though we have carefully read the record. It does seem strange that she should be entirely ignorant of this wholesale scheme of fraud, but she and her husband both swear positively that she had no part in it, and we have been unable to find any evidence in contradiction of their positive testimony, however improbable that testimony may seem.

Neither do we think that appellant has established the allegation that the deed to Ann Enright was wholly without consideration. Some of the money that came to John and Ann Enright from her father's estate is unquestionably shown to have been a gift to the husband. The first money so coming to them she testified was her "dowry" from her father; and she says further that she used a part of this herself, and gave the remainder to her husband, and that it was mostly used to buy furniture. That money, consequently, constituted no part of any debt from the husband to the wife, and furnishes no support to the

claim of consideration in the deed made to her. Again, in a purchase of land made by John Enright it appeared that a debt on the land for $1,000.00 was due to Ann Enright's father, and that he canceled the lien created by that debt by way of advancement to his daughter, so that John Enright obtained the land for $1,000.00 less than its full value. This also did not make John Enright a debtor to his wife. It was, in substance, a gift to John Enright himself. See *Lewis* v. *Stanley*, 148 Ind. 351. And in the final distribution of the estate of Ann Enright's father a note was given to her husband, on which was realized $336.62. This, too, so far as the evidence discloses, was a gift to John Enright, and constituted no debt by him to his wife. As to a distribution to them of $1,300.00, the evidence is very indefinite. Ann Enright testified that she did not know what became of it; that she thought it went into a purchase of land made by her husband. She even said positively, "I never had it in my possession, I know that."

If the foregoing were all the evidence in support of a consideration for the deed to Ann Enright by her husband, it would clearly have been quite insufficient. But as to $650.00 given to her by her father in 1869, the case is different. The evidence by her and by her husband is positive, and the same is corroborated by her brother, that this money was received by her from her father, and that it was given by her to her husband in trust for her. She says, "I told him I wanted him to take that and take care of it for me." And John Enright says, "I told her I would take care of it for her." Then, as to the deed itself, her testimony is, "Well, he gave it to me for the money that he had received from my estate, and he had always promised that he would give me back the money." He said, as

to the same matter, "I deeded it to her because I owed her, and wanted to pay her."

But, conceding that it is thus shown that John Enright held $650.00 of his wife's money in trust for her, and that the deed to her was made in satisfaction of this obligation, the question arises whether the consideration was sufficient as against creditors. The land was worth about $8,000.00, and the only legal consideration for the conveyance was this $650.00.

If the wife paid nothing for the deed, the law would treat the transaction as showing positive fraud against the creditors on the part of the husband. Moreover, for reasons of public policy, and to protect the rights of creditors, the law would also treat the sale as constructively fraudulent on the part of the wife, even though no actual fraud were brought home to her. "Although she may not be actually a party to the fraud of her husband, yet," as said in *Roberts* v. *Farmers', etc., Bank*, 136 Ind. 154, "she is affected by all the equities which might be enforced against him, and the conveyance will be set aside."

It does not seem that the rule could be different in case the consideration were merely nominal, or even where, though considerable in amount, it should be yet wholly inadequate as compared with the value of the property conveyed. Not only, therefore, ought the inquiry be as to whether the purchaser made any payment, but also as to whether the payment made was a reasonably adequate price for the property, or whether it was so grossly inadequate as to shock our sense of natural justice. *Brookville National Bank* v. *Kimble*, 76 Ind. 195, 202; *Fulp* v. *Beaver*, 136 Ind. 319; *Prosser* v. *Henderson*, 11 Ala. 484.

In Wait, Fraud. Conv. (3d ed.), section 209, it is said: "The consideration must be adequate; not that the courts will weigh the value of the goods sold and

the price received, in very nice scales, but after considering all the circumstances they will hold that there should be a reasonable and fair proportion between the price and the value."

In *Sandman* v. *Seaman*, 84 Hun 337, 32 N. Y. Supp. 338, a conveyance by a husband to his wife of property worth $5,000.00, subject to a mortgage for $1,000.00, and for a consideration of $1,000.00 additional was set aside. In *Wilson* v. *Jordan*, 3 Woods (U. S. Cir. Ct.) 642, where the value was $7,700.00, and the estimated consideration $1,537.00, the transaction was held to be conclusively fraudulent. It was there said, "The difference between the property conveyed to her and the consideration paid 'was so great as to shock the common sense of mankind, and furnish in itself conclusive evidence of fraud,' " citing *Kempner* v. *Churchhill*, 8 Wall. 362; *Ratcliff* v. *Trimble*, 12 B. Monroe, 32; *Borland* v. *Mayo*, 8 Ala. 104.

In *Smith* v. *Selz*, 114 Ind. 229, this court, speaking by Judge Mitchell, said: "In the exercise of its flexible jurisdiction, a court of equity may set aside a conveyance as fraudulent in law, when the disparity between the actual value of the property conveyed and the purchase price is so great as to be legally injurious to the creditors, and to constitute a fraudulent diversion of the debtor's property, or it may, under like circumstances, compel the purchaser to account for the difference in value."

In the case at bar, the learned judge who presided may have been of opinion that all the property that came to the husband from the estate of his wife's father, amounting to about $3,500.00, might be considered as the consideration for the $8,000.00 farm deeded to her. If that were true, and if we should deduct the wife's inchoate interest in the land from the total value, there would not then seem to be such

a disparity between the value and the consideration as would "shock the common sense of mankind." But a consideration of $650.00 appears totally inadequate for a farm worth $8,000.00, even subject to the wife's inchoate interest. The disparity is much greater than in the cases of *Sandman* v. *Seaman* and *Wilson* v. *Jordan,* above cited, and we think there is, therefore, greater cause for setting aside the conveyance as against the rights of *bona fide* creditors. Nor, although the wife is not shown to have had any positive knowledge of her husband's fraud, can we close our eyes altogether to the fact that she knew that at the time of this conveyance he dispossessed himself suddenly of all his property, being 400 acres of unincumbered land, worth nearly $16,000.00. This should have aroused some suspicion in her mind, particularly when her own deed for 200 acres was presented to her without any previous intimation that it was to be given to her.

We think that this is such a case as was perhaps in the mind of the court in *Smith* v. *Selz, supra,* where it was further said that if the "property has been purchased from a failing debtor, without any positive fraud on the part of the purchaser, and yet under such circumstances as make it highly injurious and inequitable as to creditors that the transaction should stand, a conveyance may be set aside upon such terms as will protect a purchaser whose purchase is only constructively fraudulent;" that is, "upon the condition that the equities of the purchaser who was guilty of no actual fraud be protected.", Not only should Ann Enright's inchoate interest in her husband's land be guarded, but also the debt of $650.00 due her from her husband, as also other debts due her by him, if any, that formed a part of the consideration. Her rights as to these interests in the land are quite as

sacred as those of the appellant. In addition, it is to be remembered that the deed is good as between the parties, and is void only as to the creditors. "Satisfy the creditors and. the conveyance stands," as said by Judge Story, cited in *Kitts* v. *Willson,* 140 Ind. 604.

Judgment reversed, with directions to grant a new trial.