# The D. L. Adams Company et al. *v.* The Federal Glass Company.

[No. 22,513.   Filed December 11, 1913.]

1.· Execution.— *Supplementary Proceedings.— Foundation. — Return.—Sufficiency.*—A proceeding supplementary to execution is a summary proceeding, and is not an action on the return, and, under §858 Burns 1908, §815 R. S. 1881, providing that a judgment debtor, after return of execution unsatisfied, may be required to answer concerning his property within the county to which such execution was issued, a return generally of *nulla bona* is sufficient to authorize the proceeding.  p. 579.

2. Execution.— *Supplementary Proceedings.— Complaint.— Sufficiency of Allegation.*—The allegation of the complaint in a proceeding supplementary to execution, that the execution was returned unsatisfied for the reason that defendant had no property in the county subject to levy and sale upon said execution, was in the language of the statute and a sufficient allegation of a return of *nulla bona.*  p. 579.

3. Execution.—*Supplementary Proceedings.—Complaint.—Allegations.—Conclusions.*—In a proceeding supplementary to execution, an allegation in the complaint that on the day the judgment was rendered the president and principal stockholder of defendant company caused all the tangible property to be transferred by the corporation to himself, sufficiently avers the transfer as a fact and not a conclusion.  p. 580.

4. Execution.— *Supplementary Proceedings.— Complaint.— Sufficiency of Allegations.—Transfer by Debtor.*—Allegations of the complaint in a proceeding supplementary to execution that defendant corporation had transferred to its president, also a party defendant, all its tangible property without any consideration whatever being received therefor, and that the transfers were made solely for the fraudulent purpose of hindering, cheating and delaying the collection of plaintiff's judgment, and that the defendant president has all the property of defendant corporation in his possession and wrongfully refuses to apply it toward payment of the judgment, are sufficient averments that such transfers were without consideration.  p. 580.

5. Execution.— *Supplementary Proceedings.— Complaint.— Sufficiency.*—A complaint supplementary to execution, alleging the return of execution *nulla bona*, and that a certain person, made a defendant in the proceeding, has in his possession certain prop-

erty of the execution defendant, which he refuses to apply on the judgment, is sufficient.    p..581.

6.  CORPORATIONS.—*Fraudulent    Transfers.—Allegations.—Proceedings Supplementary to Execution.*—The transfer of all its property by a corporation while indebted, and without consideration, to one who had notice and who is alleged to have caused it to be done by virtue of his relationship to and holdings in the corporation, whereby creditors were hindered and delayed in the collection of their just demands, was in and of itself a fraud on such creditors, so that it was proper to allege in a complaint against it supplementary to execution that such transfer was made solely for the fraudulent purpose of hindering, cheating and delaying its creditors.    p. 581.

7   PLEADING.—*Complaint.—Sufficiency.—Repugnant    Allegations.*— A complaint is not demurrable, even if certain allegations are so repugnant as to nullify each other, where other facts sufficient to constitute a cause of action are alleged.    p. 582.

8.  EXECUTION.—*Supplementary    Proceedings.—Complaint.—Allegations.—Sufficiency.*—A complaint in a proceeding supplementary to execution, alleging that the president of the judgment debtor corporation, who is made a defendant, had on deposit $2,000 in a certain bank, also made a defendant, which was transferred to him by the defendant corporation along with its other property which is alleged to have been fraudulently transferred, and that such money is in fact the property of the defendant corporation, was sufficient to reach such money, even if other allegations referring to the property of such corporation were repugnant to each other.    p. 582.

9.  EXECUTION.—*Supplementary    Proceedings.—Review.*—In a proceeding supplementary to execution against a judgment debtor corporation, and its president, who is alleged to be in possession of its property, and who informed the sheriff that the corporation had no property and that he had purchased it, neither defendant could complain of an order by plaintiff's attorney not to levy on such property, nor of an order to return the execution issued to another county in which defendant's home office was located, in view of the fact that defendant had no property in that county and the execution was returned *nulla bona.*    p. 585.

10.  EXECUTION.—*Supplementary    Proceedings.—Conditions    Precedent.*—An execution creditor is not bound to levy on property claimed by another, as a condition precedent to supplementary proceedings.    p. 585.

11.  EXECUTION.—*Supplementary    Proceedings.—Ground of Proceeding.*—Where the original complaint in a proceeding supplementary to execution made the execution defendant and others parties to an order to appear and answer concerning the property of the

execution defendant, and the original execution, issued to the county in which such defendant's home office was located, though returned after the proceeding had been instituted, had expired by limitation prior to that time, notwithstanding *alias* executions were issued a week prior to the filing of an amended complaint in such proceeding, the grounds for the proceeding on such amended complaint had been laid by the preceding execution.   p. 585.

12.  CORPORATIONS.—*Transfers.—Preferences.—Transfer to President of Corporation.*—Where a debtor corporation transferred all its tangible property to its president, the fact that it required the vote of the president to consummate the transaction, and that it resulted in a preference to some creditors, and to himself to the extent of his *bona fide* claims, would not render the transaction without consideration or fraudulent.   p. 587.

13.  CORPORATIONS.—*Proceedings Supplementary to Execution.—Property Subject.*—Where a debtor corporation had transferred all its tangible property to its president in settlement of his *bona fide* claims against it, and on his undertaking to pay its indebtedness, upon a showing that the corporation did not owe him the amount he claimed, equity would apply the difference to the indebtedness due to an execution creditor, whose claim such president claimed the corporation did not owe.   p. 587.

14.  APPEAL.—*Review.—Harmless Error.—Conclusions.*—Where the conclusions of the trial court are correct, the fact that the grounds upon which, in part, they are stated as having been based, are erroneous, is not cause for reversal.   p. 588.

15.  CORPORATIONS.—*Proceeding Supplementary to Execution.—Evidence.—Ownership of Property.*—In a proceeding supplementary to execution, where the evidence was conflicting, a finding for plaintiff will not be disturbed on the ground that the court ordered certain property sold as the property of the execution defendant, which a codefendant in the proceeding claimed as having been purchased by himself and placed with the property of the execution defendant.   p. 588.

From Jay Circuit Court; *Levi Mock*, Special Judge.

Proceeding supplementary to execution by The Federal Glass Company against The D. L. Adams Company and others.   From a judgment for plaintiff, The D. L. Adams company and D. L. Adams appeal.   (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Frank H. Snyder* and *Whitney E. Smith*, for appellants. *James R. Fleming*, for appellee.

Myers, J.—This is a proceeding supplementary to execution under §§858, 859 Burns 1908, §§815, 816 R. S. 1881, by appellee against appellants, The D. L. Adams Company and D. L. Adams, and against the Peoples Bank of Portland, Indiana, as to which it is alleged that it has in its possession money belonging to The D. L. Adams Company which is sought to be sequestered. The D. L. Adams Company is alleged to be a corporation of the State of Indiana, having its principal office in Jay County, Indiana, and that D. L. Adams is a resident of that county.

The errors assigned are in overruling the separate demurrers of The D. L. Adams Company and D. L. Adams respectively, and in overruling their separate motions for a new trial. As to the complaint, the points of alleged insufficiency are, that the allegation that "plaintiff caused an execution to be issued" on the judgment theretofore rendered and that "said execution was returned by said sheriff unsatisfied," are recitals and conclusions. The complaint avers the recovery in the Jay Circuit Court, April 23, 1910, of a judgment by appellee against The D. L. Adams Company, and that it is due and unpaid. That on May 5, 1910, an execution was issued on such judgment to the sheriff of Jay County, Indiana, and was returned by the sheriff unsatisfied, for the reason that the execution defendant had no property in that county subject to levy and sale on execution. That an execution issued May —, 1910, on such judgment to the sheriff of Grant County, Indiana, was returned unsatisfied for the reason that the execution defendant had no property in that county subject to levy and sale on execution. It is appellants' claim, that as the supplementary proceedings are based on the return, what the return is, depends on the endorsement on the execution carried into the execution docket, and that these returns must be counted on in their terms, in the complaint. The proceeding is not an action on the return, and a return generally of *nulla bona* is sufficient to authorize the discovery

under §858, *supra.* The allegation here is, that as to each execution it was "returned unsatisfied for the reason that the said defendant The D. L. Adams Company had no property in said county subject to levy and sale upon said execution." The proceeding is summary, the allegation is in the language of the statute, and is a return of *nulla bona,* and sufficient. *Pouder* v. *Tate* (1887), 111 Ind. 148, 12 N. E. 291; *Burkett* v. *Bowen* (1888), 118 Ind. 379, 21 N. E. 38; *Wallace* v. *Lawyer* (1883), 91 Ind. 128; *Sherman* v. *Carvill* (1880), 73 Ind. 126; *First Nat. Bank* v. *Stanley* (1891), 4 Ind. App. 213, 30 N. E. 799.

It is next urged that the allegation that "the said David L. Adams who was the president and general manager of said defendant company, and principal stockholder and owner of said defendant company, caused all the tangible property, both real and personal, to be transferred by said corporation, The D. L. Adams Company, to said defendant D. L. Adams," is not the averment of a fact. The transfer is alleged to have been made on the day the judgment was rendered. The argument is that "whether the transaction so caused was a transfer in fact, depends upon how far we may go to infer so particular effect, from the alleged operating cause." We do not deem it necessary to analyze the allegation; it is sufficient to say that it avers the fact of a transfer, to the mind of one of common understanding.

It is next urged that the allegation that "each and all of said transfers were made without any consideration whatever being received therefor, and were made solely for the false and fraudulent purpose of hindering, cheating and delaying the collection of plaintiff's said judgment." The point made is, that it is not enough to say that no consideration was *received.* That there may have been a consideration which is still due, or moving to a third person, or it may have been any one of a number of valid considerations beyond a consideration *received.* It is

to be noted that it is also alleged that D. L. Adams has all the property of The D. L. Adams Company in his possession, describing it, all of which is in fact the property of the company which the latter and D. L. Adams unjustly and wrongfully refuse to apply toward the payment of the judgment. The allegation does not bring the case within the rule of the line of cases cited by appellant that an answer pleading no consideration to the pleader, is insufficient, for the reason that there may have been a consideration to a third person. Some of those cases are distinguished in *Moyer* v. *Brand* (1885), 102 Ind. 301, 26 N. E. 125, but here the allegation is not qualified by limiting it to the corporation, or any other person or corporation, but the allegation is that the transfer was without any consideration whatsoever being received therefor, which is but another though perhaps less direct way of saying that the transfer was without consideration.

But aside from this allegation, it is affirmatively alleged that D. L. Adams has in his possession certain personal property which is the property of the execution defendant, which he refuses to apply on the judgment, so that the complaint states a cause of action in that respect, in any event.

It is next urged that the characterization of the transfer as fraudulent is not sufficient in the absence of allegations of fact showing the fraud. The transfer of the property while indebted, and without consideration, to one who had notice, and who is alleged to have caused it to be done by virtue of his relationship to, and his majority holdings in the corporation, by which they were hindered or delayed in the collection of their just demands, was in and of itself a fraud upon the corporation creditors, when it was left without property by the transaction. *First Nat. Bank* v. *Smith* (1898), 149 Ind. 443, 446, 49 N. E. 376; *Personette* v. *Cronkhite* (1894), 140 Ind. 586, 40 N. E. 59; *Jameson* v. *Dilley* (1901), 27 Ind. App. 429, 61 N. E. 601. It was therefore proper to allege that the transfers were made solely

for the fraudulent purpose of hindering, cheating and delaying its creditors. The statute itself makes such conveyance void as to the person sought to be defrauded. §7479 Burns 1908, §4920 R. S. 1881.

It is alleged in the complaint that alias executions had been issued to the sheriffs of Jay and Grant counties, in the State of Indiana, and that the executions had been returned, but that the sheriffs of these respective counties had been unable to levy the executions for the reason that the D. L. Adams Company has no property in these respective counties "in the State of Indiana, subject to levy and sale," and that after the transfers alleged, The D. L. Adams Company was left without property of any kind or character within the State of Indiana, subject to levy and sale on execution, "and the said company now has, nor owns any property subject to levy and sale upon execution in the State of Indiana," and elsewhere it is alleged respecting the property in the possession of D. L. Adams that it is in fact the property of The D. L. Adams Company. It is claimed that these allegations are repugnant, that if it was the property of The D. L. Adams Company it was subject to levy and sale, contrary to the allegations that the company was left without property, that in the conflict of the two statements nothing is affirmed, and consequently nothing is admitted by demurrer. Without determining that question, it is sufficient to say, that if these

7. allegations are repugnant to each other, other allegations necessary to make a good complaint are al-

8. leged. Among other things it is alleged that D. L. Adams had $2,000 on deposit in the Peoples Bank of Portland, Indiana, which was transferred to him by the transfer which is claimed to be fraudulent, and that it is in fact the property of the debtor corporation, and the bank is made a party. This money could not be reached by execution, and the complaint was good to reach that

money at least, even if the allegations referred to by appellants are material, and are repugnant to each other.

It appears by the evidence that The D. L. Adams Company was a manufacturing corporation organized under the laws of the State of Indiana, January 1, 1900. The capital stock was fixed at $50,000, of which $16,000 was subscribed by D. L. Adams, $5,000 each by W. W. Haynes and Wm. A. Moorman, and $4,000 by J. S. Engle. Adams paid in $26,192.88 by a plant and stock then owned by him.; Haynes and Moorman paid in $500 each, and it does not appear that Engle paid in anything. The three gentlemen other than Adams went in to form the corporation and on November 24, 1900, Haynes and Moorman assigned their stock to D. L. Adams and each received from him $500, the amount they had paid in. Judge Engle on the same day assigned his shares to D. L. Adams. November 18, 1903, the latter sold two shares to one Mellinger, and repurchased the same November 30, 1905; June 20, 1905, he sold two shares to one Glasgow, and on November 30, 1905, sold five shares to his wife; at that time, and continuously thereafter D. L. Adams held 223 of the 3,000 shares issued, and was all the time president, treasurer and general manager of the corporation; after November 30, 1905, his wife and Glasgow were directors, and Glasgow secretary. Dissolution was attempted December 13, 1909, at a meeting in which it was decided that it was to the best interests of the company to sell its property. No record appears to have been made, but the dissolution papers were claimed to have been filed with the Secretary of State. The invoice amounted to $14,528.02, made up of $8,000 for the plant in Grant County, and $6,528.02 for the stock on hand and accounts, and they were taken over by D. L. Adams. There was $478.69 in bank, which was also turned over to D. L. Adams, and applied on account claimed to be due him. At that time the liabilities were $14,731.53 including $2,429.95

claimed to be due D. L. Adams as salary as president, treasurer and general manager, not including appellee's claim. At that time appellee held a judgment against The D. L. Adams Company, rendered in Ohio, for upwards of $1,500, rendered April 28, 1909. D. L. Adams knew of this judgment, but claimed the company did not owe it. He also claimed $3,897 as due him for principal, and interest on a note of the corporation. The company owed $7,575.42 to banks and several small accounts which increased the indebtedness of the company to $14,731.53. These claims were all paid by D. L. Adams personally, including about $200 additional, and he claims to have taken over the assets because they were less than the liabilities, and the company was insolvent, and doing no good, and the company concluded it was best to sell out, and he took its property. There is no showing of the items of indebtedness he was to pay, or to whom they were due, or that he agreed to pay them; his evidence is, that he took over the property by paying all of the indebtedness, the items of which he enumerated, and there was no other evidence on the subject except his statement, that he purchased the plant at the invoice, and had paid the items of indebtedness given by him. The judgment in the Jay Circuit Court, April 23, 1910, issuance of executions as alleged in the complaint, and their return *nulla bona,* and an order by appellee's attorney to return the writ to the sheriff of Jay County, May 29, 1910, and the execution to Grant County returned unsatisfied, no levy made by order of appellee's attorney, November 26, 1910, the issuance of alias executions, and their nonreturn as alleged in the complaint, are shown. It also appears that the company had no other property than that taken by D. L. Adams. The company during its existence sustained severe losses aggregating $27,000 by fire and a dishonest clerk.

The controversy here wages around two propositions,

first, the contention of appellants that by directing the return of the executions, appellee has not placed itself in a situation to maintain the proceeding, because if the property belongs to the corporation, it should have been levied on; and second, that the sale to D. L. Adams, even though it amounted to a preference, upon a sufficient consideration, was valid and not fraudulent. It appears from the evidence that all the tangible property was in Grant County. The order to return the execution issued to Jay County where appellant company's home office was located, coupled with a showing by the return that the execution defendant had no property in that county, was not a matter of which appellants can complain. As to the execution to Grant County neither appellant can complain of the order not to levy the execution when D. L. Adams, executive officer of the company, stated to the sheriff as shown by his return, that the company had no money or property, and the company claimed to have sold and D. L. Adams to have purchased it, and the execution, when ordered not levied, had expired by limitation. Appellee was not driven to that necessity. It could take the course it pursued. It was not bound to levy on property claimed by another. *Vordermark* v. *Wilkinson* (1897), 147 Ind. 56, 46 N. E. 336; *Baker* v. *State, ex rel.* (1886), 109 Ind. 47, 9 N. E. 711; *McGirr* v. *Sell* (1877), 60 Ind. 249; *Hobbs* v. *Town of Eaton* (1906), 38 Ind. App. 628, 78 N. E. 333; *Harris* v. *Howe* (1891), 2 Ind. App. 419, 28 N. E. 711.

It is claimed by appellants that as this proceeding was instituted August 26, 1910, and the second executions were not issued until January 26, 1911, the original proceeding must have been based on §858, *supra,* and the returns to the original executions. The original complaint is not in the record, so we can not know its allegations, but the record does show that to the original com-

plaint The D. L. Adams Company, D. L. Adams, and the Peoples Bank of Portland were parties to an order to appear and answer that complaint, concerning property of The D. L. Adams Company subject to execution. It appears further that the original execution to Grant County was not returned until November 26, 1910, in other words it was in the hands of that sheriff when the proceeding was instituted. The amended complaint was filed January 23, 1911, the alias executions were issued, January 16, 1911, and whether it is to be regarded as a supplemental complaint, or the second executions outstanding are to be considered, we need not, and do not decide, as the grounds of the proceeding had been laid by the preceding executions, besides, the first execution to Grant County had expired by limitation when it was ordered returned.

The second proposition in the case presents more serious questions. The difficulty arises principally from the unsatisfactory condition of the evidence, in the following material particulars. First, It does not appear from the evidence what the action was, when the transfer is claimed to have been made, or whether a majority of the directors was present or acted, or whether the vote of D. L. Adams was necessary to the decision made; no minutes, resolutions or other action of which record was made are shown. Nothing appears to indicate that there was to be any preference of any creditor or creditors, nor is there any showing as to what the agreement was in taking over the property, as to what was to be done by D. L. Adams, except his evidence that he had purchased the property, and had paid certain specified indebtedness. In the indebtedness however, he claimed a balance of salary account of $2,429.95. Whether this was due him depends upon certain records of meetings of directors fixing salaries, as to which there is evidence that the records had been changed in respect to the salary of D. L. Adams for the years 1901-1909 both inclu-

sive, by erasures, over which were written "6", so as to show appellant D. L. Adams' salary as $3,600 instead of $3,000, and he himself first testified, that his salary had been $2,400 and $3,000 a year. The court inspected this record, and in the light of the other affirmative evidence of erasures, if the finding had been holding D. L. Adams for the amounts found to have been raised, if they were raised, the judgment would have to be affirmed. The court found specially in a general finding that the transfer was without consideration and fraudulent, and was made to avoid payment of appellee's judgment, and directs the application of the specific chattel property.

In view of the rule in *Nappanee Can. Co.* v. *Reid-Murdock & Co.* (1902), 159 Ind. 614, 64 N. E. 870, 64 N. E. 1115, following *Levering* v. *Bimel* (1897), 146 Ind. 545, 45 N. E. 775, and followed in *City Nat. Bank* v. *Goshen Woolen Mills Co.* (1904), 163 Ind. 214, 71 N. E. 652, and the fact that it required the vote of D. L. Adams to consummate the transaction, if it did, and that it resulted in a preference to some creditors, and to himself to the extent of his *bona fide* claims, would not render the transaction without consideration, or fraudulent. Under those cases, there was a consideration for D. L. Adams taking over the property, so that the finding that it was without consideration and fraudulent, is not borne out by the evidence, under the law as thus declared, but there is a general finding that the allegations of the complaint are true, in which is embraced the allegation that D. L. Adams has this property in his possession, and that it belongs to the appellant company. Appellant D. L. Adams bases his right to it on the ground that it was not equal to the indebtedness, and of his having taken it over, and undertaking to pay its indebtedness, without indicating what indebtedness, in which was included indebtedness to himself. If the company was not owing him the

amount claimed, as to which there is some evidence as to $2,400, and appellee's claim had been adjudged a valid claim against the company, then appellant necessarily has in his possession property of the company, which has not been applied to its indebtedness, and equity should apply it. The conclusions of the court below were correct, though the grounds upon which, in part, they are stated as having been arrived at, are erroneous, but they do not constitute reversible error.

Complaint is also made that the court ordered two hoop lappers and hoop coilers sold, when they had been purchased by D. L. Adams after his purchase of the property owned by the company. The evidence on this point is conflicting and entirely unsatisfactory. At one time D. L. Adams testified that he added the "hoop machinery afterward." At another he testified that he purchased of the company "two boilers and engine, sawmill complete with saws and tools, hoop cutter, two hoop planes, hoop lapper, hoop coilers, machinery to coil hoops, and a cut-off saw, and the belting and tools, everything that there was there at the time." If appellant added any machinery to that purchased from the company after his purchase which could be separated from the property purchased, it was his duty to show it. If he so adjusted it to the other machinery that it became a part of it, and commingled it with the other property, that was both his mistake and his misfortune. If he had made such a showing doubtless the court would have protected any right he had in such property, and on motion to modify, we could have corrected it here, but he has done neither. The plant was in part a hoop mill, and in operation when purchased, and under the evidence appellant does not make it appear that his individual property thereafter acquired was ordered sold.

Other questions are presented which we do not set out

in detail, owing to the length of the opinion now, but we have examined each of them and find no harmful error.

The judgment is affirmed.

Note.—Reported in 103 N. E. 414. See, also, under (1) 17 Cyc. 1402, 1409; (2) 17 Cyc. 1421; (3) 31 Cyc. 49, 51; (6) 20 Cyc. 511; (7) 31 Cyc. 287; (11) 17 Cyc. 1432; (12) 10 Cyc. 1254; (13) 17 Cyc. 1412; (14) 3 Cyc. 221; (15) 3 Cyc. 360; 17 Cyc. 1489. As to proceedings supplemental to execution, see 100 Am. Dec. 500.