Bechara Nader, Transferee v. Commissioner.
Nader v. Commissioner
Docket No. 71470.
United States Tax Court
T.C. Memo 1962-156; 1962 Tax Ct. Memo LEXIS 155; 21 T.C.M. (CCH) 867; T.C.M. (RIA) 62156; June 26, 1962
*155 Held, that the fair market value of certain unimproved realty which was transferred to the petitioner by his brother-in-law and sister-in-law for $11,500, was not less than $35,000. Held, further, that said transfer was made when the transferors were insolvent and heavily indebted to the Government for unpaid income taxes, and was without adequate consideration; and that petitioner is liable as a transferee to the extent of the excess of the fair market value of the property over the consideration which he paid therefor. Lucien L. Dunbar, Esq., and Thomas C. Collier, Esq., for the petitioner. George H. Becker, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined in 1957 that petitioner was liable as a transferee of the *156 assets of George J. Deeb, Sr., and his wife Charline Deeb, for unpaid deficiencies in the Deebs' income taxes, for the following years and in the following amounts (together with interest thereon according to law): Year
Amount
1948
$4,036.44
1949
137.34
1952
2,391.76
1953
3,510.70
The principal issue for decision is whether the petitioner is liable as such transferee. The underlying question raised by this issue is whether the conveyance to the petitioner by the transferors of a certain 24-acre tract of unimproved real estate was for a consideration that was less than full, fair and adequate; and this question in turn largely hinges on a determination of the fair market value of said 24-acre tract on August 2, 1955, the date of the conveyance thereof to the petitioner. The above-listed deficiency for the year 1949, together with interest thereon, was paid in full in 1958; and accordingly said 1949 liability is no longer involved. As to the amounts of the unpaid tax liabilities of the Deebs for the remaining years, the parties in the instant case have stipulated that "these liabilities are not being contested in this proceeding." Findings of Fact Some *157 of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference. The petitioner, Bechara Nader, is an individual who resides in Brooklyn, New York; and he is now, and was during the year 1955, married to Zakieh Nader, the sister of George J. Deeb, Sr., who is one of the transferors here involved. On August 2, 1955 (hereinafter called "the material valuation date"), George J. Deeb, Sr., and Charline Deeb, his wife, transferred to the petitioner a certain parcel of real estate (hereinafter called "the subject property") situated in Washington Township, in the northwestern part of Marion County, Indiana. The consideration paid by the petitioner for the transfer of the subject property to him was $11,500. The subject property contained 24 acres. It was situated at the southeast corner of 42nd Street and Kessler Boulevard, in the suburban area of Indianapolis, Indiana; but the record does not disclose its exact distance from the city limits. The topography of the subject property may be described as follows: It was generally flat, but it had a slight depression or valley in the southeast corner. It consisted *158 mostly of open fields, with only a few trees in the northern portion. There were no streams through the property. Its borders were all straight lines; and its shape was almost a square, except for a small 2-acre tract containing three lots that had been carved out of what would have been the southwest corner, and except also for a second tract (known as Sun Meadow Addition) of approximately 4 acres that had been carved out of what would have been the northeast corner. The western boundary of the subject property fronted on Kessler Boulevard, while about one-half of the northern boundary fronted on 42nd Street. Situated on each of the three above-mentioned lots at the southwest corner, there was a frame house which was about 40 to 50 years old. Kessler Boulevard is a rather heavily traveled arterial roadway running in a northsouth direction. It interesects with 38th Street, another rather heavily traveled highway running in an east-west direction, at a point about 660 feet south of the subject property. Kessler Boulevard, like all other boulevards in Marion County, was under the control of the county park board; and this board would only permit the erection of residential dwellings *159 on boulevards, and within 500 feet on each side thereof. For several years prior to the material valuation date there had been speculation in the Indianapolis area that a bridge would be erected over the White River into Indianapolis at 38th Street, which would thereby increase the traffic along 38th Street near the subject property. Construction of the bridge was not actually begun however until about 1960. The highest and best use of the subject property on the material valuation date was development as a residential subdivision. In 1955, the area in and around 42nd and Kessler was not densely developed. However, one residential subdivision (Arbordale Highlands), directly across Kessler Boulevard from the subject property, had been completed in 1953; and various builders were on the lookout for other property in the neighborhood, which could be developed. Louis Frosch, the builder who had developed Arbordale Highlands, was interested in acquiring the subject property; and in 1955 and prior to the transfer here involved, he had instructed an individual named William Beattie, who was handling his real estate acquisitions, to offer $1,500 per acre or "a little more" for the subject *160 property. However, when Beattie telephoned the real estate agent with whom the property was listed, he was informed that the asking price was $3,000 or $5,000 per acre - a price which both Frosch and Beattie considered to be too high. In addition to Arbordale Highlands, another development had been begun shortly prior to the transfer here involved, in a subdivision known as the Fourth Section of Burris Second Subdivision, which lay about one block to the north of the subject property. The Burris Fourth Section consisted of 15.36 acres, and it had been purchased by the developer in July 1954 at a price of $22,500, or $1,460 per acre. This Burris property was heavily wooded and had a creek running through it. It lent itself to a more expensive type of housing than did the subject property; but also it was more expensive to develop than the subject property, owing to its more rugged terrain. Also, just to the east of the Burris Fourth Section, across a street named Cooper Road, lay the Second and Third Sections of Burris Second Subdivision, on which development had started during 1955. Adwin Burrssis, the developer of the just mentioned subdivisions bearing his name, also was interested *161 in acquiring the subject property; and he authorized the above-mentioned Beattie to offer $1,500 per acre therefor. However, as before stated, Beattie was advised by the real estate agent who had a listing for the subject property, that the asking price therefor was $3,000 or $5,000 per acre. Lying just to the south of the Burris Fourth Section and between it and the subject property was a tract of land known as the Churchman property. [1] The Churchman property consisted of 18.723 acres; and it was sold on May 2, 1955, at a price of $20,000, or $1,068 per acre. The Churchman property had no frontage on Kessler Boulevard; and it had a rolling contour and was rather heavily wooded. Its terrain, like that of Burris Fourth Section, would be more expensive to develop than that of the subject property; and by reason of such terrain, both it and the Burris Fourth Section would yield less lots per acre upon being subdivided, than would the subject property. In September 1957, 8 unimproved lots (averaging in size, 1/2 acre *162 per lot) located in the above-mentioned Sun Meadow Addition at the northeast corner of the subject property, were purchased for the sum of $17,500. Land values, in the vicinity of 42nd Street and Kessler Boulevard, were rising throughout the period from 1951 through 1956. The fair market value of the subject property on August 2, 1955, the material valuation date, was not less than $35,000 (or about $1,458 per acre). At the time that the Deebs transferred the subject property to the petitioner for $11,500, they were insolvent. A list of their assets and liabilities on August 1, 1955, just prior to said transfer, is as follows: ASSETS
Cash in bank
$ 861.81
Cash value of 4 policies of life insurance
4,969.24
Proprietor's equity in Steel or Bronze Sealing Ring Co.
5,203.87
Real estate -
Residence *
$15,000.00
Subject property *
35,000.00
50,000.00
Household furnishings *
1,000.00
1953 Lincoln automobile
2,000.00
Securities -
U.S. Government Bonds (Series E)
$14,980.00
Affiliated Funds, Inc. (105 shs.) *
670.42
Studebaker Corp. stock (20 shs.) *
160.00
Bennett Bros. stock (15 shs.) *
15,810.42
Value of Total Assets
$ 79,845.34
LIABILITIES
Notes payable
$ 2,000.00
Real estate taxes
376.97
Personal property taxes
624.42
Federal income tax liabilities and interest thereon
(as hereinafter specified) -
George J. Deeb, Sr., and Charline Deeb
$ 12,297.91
George J. Deeb, Sr.
145,029.05
Charline Deeb
46,718.92
204,045.88
Total Liabilities
$207,047.27
*163 The following schedule contains the details of the Deebs' Federal tax liabilities, as listed in the foregoing table: Amount of
Accrued
Total
Deficiency
Interest
Liability
Year
Kind of Tax
How Determined
Determined
to 8/1/55
as of 8/1/55
George J. Deeb, Sr., and Charline Deeb
1948
Income
T.C. Docket No. 52580 *
$ 4,036.44
$ 1,545.13
$ 5,581.57
1949
Income
T.C. Docket No. 52580 *
137.34
44.35
181.69
1952
Income
Agreement Form 870
2,391.76
341.53
2,733.29
1953
Income
Agreement Form 870
3,510.70
290.66
3,801.36
Totals
$ 10,076.24
$ 2,221.67
$ 12,297.91
George J. Deeb, Sr.
1945
Income
T.C. Docket No. 52579 *
$ 18,836.13
$10,600.87
$ 29,437.00
1946
Income
T.C. Docket No. 52579 *
10,900.56
5,480.74
16,381.30
1947
Income
T.C. Docket No. 52579 *
1,257.70
556.90
1,814.60
George J. Deeb, Sr., Transferee (Steel or Bronze
Piston Ring Corp., Transferor)
1945
Excess profits
T.C. Docket No. 43983 **
97,396.15
(Included in
97,396.15
deficiency)
Totals
$128,390.54
$16,638.51
$145,029.05
Charline Deeb, Transferee (Steel or Bronze Piston
Ring Corp., Transferor)
1944
Income
T.C. Docket No. 43982 **
$ 1,212.77
Included in
$ 1,212.77
1944
Excess profits
T.C. Docket No. 43982 **
8,104.29
deficiency
8,104.29
1945
Excess profits
T.C. Docket No. 43982 **
37,401.86
37,401.86
Totals
$ 46,718.92
$ 46,718.92
*164 During September 1955, a revenue officer representing the respondent, personally contacted George J. Deeb, Sr., and Charline Deeb; and he made demand upon them at that time for payment of their Federal income tax liabilities. Thereafter, several offers in compromise were filed by the Deebs, either individually or jointly, for the purpose of settling their Federal tax liabilities for amounts less than the outstanding balances thereof, for the stated reason that their assets were insufficient to pay such liabilities in full. The respondent suspended his collection activity during the times that these offers were pending, in order that the information contained therein could be investigated. However, active attempts at collection were made by the respondent at all other times when the offers in compromise were not on file; and these *165 attempts included levying jeopardy assessments, filing of notices of Federal tax liens, and distraint and sales of certain assets. The only portion of the above-listed Federal tax liabilities that has been paid since the Deebs' transfer of the subject property to the petitioner on August 2, 1955, was that for 1949 in the amount of $137.34, together with interest thereon; and this was paid in 1958, as mentioned in the preliminary statement hereinabove. On October 10, 1957, the respondent issued a notice of liability to petitioner, in which he determined that petitioner was liable as transferee of assets of the Deebs in the amount of $10,076.24 (plus interest thereon as provided by law), in respect of the Deebs' income taxes, as assessed against and due from the Deebs for the years 1948, 1949, 1952 and 1953. Opinion The principal issue for decision in the instant case is, as above stated, whether the petitioner is liable as a transferee of George J. Deeb, Sr., and Charline Deeb, husband and wife, for their tax liabilities for the years 1948, 1952 and 1953 (including interest) - to the extent of the excess of the fair market value of the subject property over the $11,500 consideration *166 which petitioner paid to said transferors therefor. The respondent proceeded against the petitioner under section 311 of the Internal Revenue Code of 1939, which provides, so far as here material as follows: SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds): (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. * * *
Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax. The burden of proving that petitioner is liable as a transferee of the *167 Deebs' assets is on the respondent. Section 1119(a) of the 1939 Code. The Supreme Court has held that the existence of transferee liability is governed by state law. Commissioner v. Stern, 357 U.S. 39. Concerning the elements that the respondent must prove to make out a case of transferee liability for Federal taxes, we recently stated in Blanche S. Sharp, 35 T.C. 1168, 1175, as follows: The respondent in meeting his burden must prove that the transferor was liable for unpaid Federal taxes, and that all reasonable efforts were made to collect the tax liability from the transferor before proceeding against the transferee. He must further prove that property of value was transferred to the alleged transferee without adequate consideration during or after the period for which the liability accrued; and that the transferor was either insolvent at the time of the transfer or was rendered insolvent thereby. Bartmer Automatic Self Service Laundry, Inc., 35 T.C. 317; Robert Leslie Bowlin, 31 T.C. 188, affirmed per curiam 273 F. 2d 610 (C.A. 6, 1960). Bearing in mind the foregoing elements, we turn to the facts of the instant *168 case to ascertain if the respondent has established the liability of the petitioner as a transferee, for the income tax liabilities, plus interest, of the Deebs for the years 1948, 1952 and 1953. There is no question in this case as to the Deebs' liability for said income taxes, for the parties have stipulated that these liabilities are not being questioned in this proceeding. Also, the Deebs admitted in several offers in compromise that they did not have the means for paying their Federal tax liabilities which, parenthetically we note, were then and still are many times greater than the amount sought to be collected from petitioner in this case. (See the table in our Findings of Fact showing the full extent of the Deebs' Federal tax liabilities.) Furthermore, we are satisfied that the respondent made every reasonable effort to collect these liabilities from the Deebs, before he proceeded against petitioner as a transferee. Although respondent temporarily suspended collection efforts during the pendency of the Deebs' offers in compromise, he at all other times since 1955 has actively sought, without success, to collect the amounts owing from the Deebs. Indeed, the respondent made demand *169 on them for payment; levied jeopardy assessments against them; filed notices of tax liens against certain of their property; and distrained and sold certain of their assets. Finally we note that the transfer of the subject property by the Deebs to the petitioner in 1955 was made after their above-mentioned unpaid tax liabilities had accrued; and also at a time when the Deebs were hopelessly insolvent - as the schedule of their assets and liabilities in our Findings of Fact shows beyond peradventure. So far as the foregoing facts are concerned, no serious question was raised in this case; and the point of real controversy has been rather, whether the transfer of the subject property by the Deebs to the petitioner on August 2, 1955, was made without adequate consideration. This controversy generated widely varying opinion testimony as to the fair market value on the material valuation date, of the 24 acres of subject property. The petitioner's witnesses, Sexton and Hurt, testified that in their respective opinions the fair market value of the subject property on said date was $562 and $570 per acre, or $13,488 and $13,680 for the tract as a whole. On the other hand, the respondent's *170 witness Teckemeyer stated that in his opinion, the fair market value on the material valuation date of said property as a whole was $35,000, or approximately $1,500 per acre. The respondent also adduced the testimony of a builder named Frosch, who had desired to acquire the subject property shortly prior to the transfer here involved, that he would have been willing to pay therefor in 1955, $1,500 per acre or "a little more." In addition, respondent presented as a witness a realtor named Beattie, who testified that he had in 1955 attempted without success to purchase the subject property on Frosch's behalf, for $1,500 per acre; and that he had another client (Adwin Burris) who likewise was willing at that time to pay $1,500 per acre for this property. After considering and weighing all the evidence of record relating to the fair market value of the subject property on the material valuation date, we have concluded and hereinabove found as a fact, that such fair market value was not less than $35,000. Most persuasive to us was the evidence that, shortly prior to the material valuation date, there were at least two financially responsible persons who were willing and actually had attempted *171 to purchase the subject property at $1,500 per acre. Also, we have accorded greater weight to the opinion testimony of the respondent's witness Teckemeyer than to that of petitioner's witnesses, Sexton and Hurt; for Teckemeyer not only was much more experienced than the other two, but also he was in our judgment better qualified to express an opinion of the subject property's fair market value. The impact of our finding that the fair market value of the subject property on the material valuation date was not less than $35,000, is that said property was transferred to petitioner without adequate consideration, inasmuch as he paid only $11,500 therefor, or less than one-third of its true value. We next must determine whether the conveyance of the subject property by the Deebs, in the circumstances of the instant case, was fraudulent under Indiana law - so that creditors of the Deebs (including the United States Government) could hold their transferee liable, to the extent of the excess of the fair market value of the property over the consideration paid therefor. Such excess, in the instant case, amounts to at least $23,500 (fair market value of at least $35,000, less consideration *172 paid of $11,500). We have concluded from an examination of Indiana judicial authorities that the latter question should be answered in the affirmative; and petitioner has cited no authority to the contrary. In Jameson v. Dilley, 27 Ind. App. 429, 61 N.E. 601, the court held that, where property has been conveyed by an insolvent person for a grossly inadequate consideration, the conveyance may be declared fraudulent as to creditors of the vendor, and be set aside. And in Smith v. Selz, 114 Ind. 229, 16 N.E. 524, the Supreme Court of Indiana recognized that, in the case of such a fraudulent conveyance, creditors of the transferor might elect, if they chose, to let the conveyance stand and hold the transferee liable to the extent of the difference between the fair market value of the property and the amount paid therefor. See also in this connection, First Nat. Bank v. Smith, 149 Ind. 443, 49 N.E. 376; and Griffith State Bank v. Clark, (Ind. App.) 199 N.E. 447. The effect of the above-cited authorities is that petitioner is liable as a transferee in the instant case for the amounts of the Deebs' income tax liabilities for the years *173 1948, 1952 and 1953, which respondent determined against petitioner in the notice of transferee liability herein; and that he also is liable for interest thereon according to law. The maximum overall extent of such liability is $23,500 - being the excess of the fair market value of the property on the material valuation date over the amount of consideration which petitioner paid therefor. We so hold. Decision will be entered under Rule 50. Footnotes
1. The Churchman property is also known, and is sometimes referred to in the exhibits and the testimony in the instant case as the Green Meadows-3d Section property.↩
*. Assets marked with asterisk are stated at their fair market value on August 1, 1955.↩
*. Decision entered by the Tax Court on November 30, 1956, pursuant to stipulation of the parties. ↩
**. Decision entered by the Tax Court on November 30, 1956, pursuant to stipulation of the parties. The tax liabilities of the Deebs' transferor was decided by this Court in the case of Steel or Bronze Piston Ring Corporation, 13 T.C. 636↩.