## PHILLIPS v. CARTER et al.

### In re L. CARTER CO.

(District Court, S. D. Georgia, E. D.    July 20, 1920.)

Bankruptcy ⏢175—Transfer by bankrupt not subject to attack by subsequent creditors.

   A transfer of property by a corporation to its principal stockholder *held* made in good faith and for full consideration received by the corporation in payment of its indebtedness, and not subject to attack by the trustee in bankruptcy of the corporation, representing creditors who became such after the transfer.

In Equity.    Suit by R. L. Phillips, trustee in bankruptcy of the L. Carter Company against L. Carter, the Pickens Company, and the Jesup Banking Company.    Decree for complainant in part.

   C. B. Conyers and Krauss & Strong, all of Brunswick, Ga., and J. R. Thomas, of Jesup, Ga., for trustee.

   Leon A. Wilson, of Waycross, Ga., and Max Isaac, of Brunswick, Ga., for defendants.

BEVERLY D. EVANS, District Judge.    The L. Carter Company, a corporation engaged in mercantile and real estate business, about the beginning of the year 1913 was very much involved in debt, owing approximately $110,000, of which $47,763.58 was due to L. Carter, its president and largest stockholder.    At a meeting of the directors, held on January 9, 1913, to consider the financial condition of the company, a proposition was made by L. Carter that, if the company would convey to him certain land at stated valuations, he would agree to discharge his debt and personally indorse for approximately the remainder of the corporation's indebtedness; that he would endeavor to get a loan on the land as security, and use such portion of the money obtained on the loan as might be necessary to pay off the indebtedness for which he became personally liable, taking the corporation's note for such amounts as he might pay.    This proposition was accepted by the directors, and the vice president was authorized to execute the necessary deeds, which was done the next day.    The aggregate value of the land was agreed upon to be $34,580, the valuations being made by Directors Gurr and Colvin.

   On May 19, 1913, Broadhurst and others filed a petition to have the L. Carter Company declared an involuntary bankrupt.    An act of bankruptcy was alleged to have been the foregoing transfers.    The Carter Company defended.    Pending this proceeding a stockholders' meeting of the L. Carter Company was held, on July 8, 1913.    At this meeting the action of the directors at the meeting of January 9, 1913, were approved and confirmed.    The involuntary bankruptcy proceeding of Broadhurst and others was dismissed by them on September 25, 1913.

   In January, 1914, L. Carter proposed to the Pickens Company to sell the land conveyed to him by the L. Carter Company and certain

⏢For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

personal property. This proposition was in writing, and was considered by the directors of the Pickens Company at a meeting held on January 24, 1914. At this meeting, on motion of Broadhurst (one of the plaintiffs in the abandoned bankruptcy proceeding), the directors accepted Carter's proposition, which was to sell certain described land, valued at $108,670, and 21 mules, 2,000 bushels of corn, wagons, etc., valued at $6,600—total, $115,270—on the following terms: He was to give for this property $115,500; $75,000 in 12 notes, of $6,250 each, one payable each year, and each bearing 8 per cent. interest, and $40,500 in stock of the Pickens Company (the charter of the company having been just amended, allowing an increase of capital stock). At a stockholders' meeting, held on February 23, 1914, the action of the directors was approved, and provision made for the consummation of the transaction. The details of consummation were left by Carter to Gurr (who managed the L. Carter Company), to be carried out according to Carter's proposition. The deeds were made by Carter to the Pickens Company, and stock of the Pickens Company to the amount of $40,500 was issued, some to Carter and some, at his direction, to members of his family; but the notes, instead of being made to Carter, were made payable to the L. Carter Company. Gurr hypothecated four of the notes with the Jesup Banking Company as collateral to certain debts of the L. Carter Company, due that bank and the Bank of Odum. These notes were afterwards discounted and the funds paid out on the indebtedness of the L. Carter Company, and the balance placed to its credit and checked out by it. The remaining eight notes, of $6,250 each, were left with the Jesup Banking Company for safe-keeping. These were afterwards given to L. Carter, who surrendered them to the Pickens Company, taking notes for like amounts payable to himself.

Subsequently, on the ——— day of January, 1915, an involuntary petition in bankruptcy was filed by Gordon & Co. and others against L. Carter Company. This company was adjudicated a bankrupt on January 30, 1915. The estate was administered by a trustee, who was discharged June 16, 1916. The case was reopened by order of court, and a new trustee was elected. The foregoing facts developed on the hearing of a bill which was filed by the new trustee on May 7, 1918.

After carefully examining the evidence, I am fully convinced that the various transfers were executed in good faith. The defendant L. Carter was the principal stockholder of the L. Carter Company, a corporation which bore his name. He seems to have been ever ready to tide that corporation over its financial difficulties, lending to it his money and his credit at different times. When he took the deeds from the corporation, it was not so much an absolute sale as it was a vesting in him of the title to the land, that he might realize by sale or by hypothecation money with which to liquidate the corporation's indebtedness. He was embarrassed by the filing of an involuntary bankruptcy proceeding, attacking the transfer to him of this land. When the proceeding was dismissed, he succeeded in finding a purchaser. The sale of the land, together with certain personal property of his own, to the Pickens Company, was made in good faith and upon ade-

quate consideration, and in execution of the terms and conditions under which the title was vested in him. The evidence justifies the conclusion that Carter settled, by personal indorsement and by payment, the debts of the L. Carter Company, existing at the time of the transfers by the L. Carter Company to him and by him to the Pickens Company, and that these debts were sufficient to absorb the cash value of the consideration received from the Pickens Company. Only two creditors of the L. Carter Company, who were such at the time of these transfers, are still unpaid. One of them, H. Traub Sons, has been paid by accord and satisfaction since the filing of this suit, and the other, the Southern Cotton Oil Company, has not been paid. There is no evidence that the debts of other creditors, besides these, were in existence at the time of these transfers, or that at the time credit was extended they had no notice of the transfers, and were induced by fraud to extend credit on the faith of the ownership of the L. Carter Company. Under such circumstances, subsequent creditors cannot attack the transfers. Am. Trust & Savings Bank v. Duncan, 254 Fed. 780, 166 C. C. A. 226.

It appears that Carter indorsed the paper of L. Carter Company to the Southern Cotton Oil Company. The record discloses that the L. Carter Company was not released from its debt. This creditor has not surrendered its debt against the Carter Company. Some of the Pickens Company stock stands in the name of L. Carter, and there is also money due by the Pickens Company to Carter. These are equitable assets, which should be applied to the judgment of the Southern Cotton Oil Company against L. Carter Company and L. Carter, indorser, and a decree will be entered, subjecting these equitable assets to the payment of that judgment.

With reference to lot of land No. 141, I think the evidence clear that the trustee should not recover that lot.

Let a decree be entered in accordance with these findings.