## DOWDLE *v.* CENTRAL BRICK COMPANY ET AL.

[No. 25,976. Filed March 6, 1934.]

*Daniel H. Ortmener, W. D. Curel,* and *Fisher, Buden, Bell, Boyd & Marshall,* for appellant.

*Chase Harding* and *Leo H. Fisher,* for appellees.

ROLL, C. J.—This is an appeal by the appellant John J. Dowdle from a judgment of the Dubois Circuit Court in consolidated cause No. 7752 wherein, among other things, it was adjudged that the bonds owned by appellant were void and the trust deed given to secure the same did not constitute a lien upon the real estate therein described and ordered appellant to deliver the bonds to the receiver for cancellation and ordered the mortgage released.

The parties involved in the consolidated cause are numerous, being mechanic's lienholders, creditors, and stockholders of the various underlying companies, and the pleadings are numerous and lengthy to the extent that it would be impractical to but make a brief reference in this opinion to them. The parties involved in

this action are LaMonte Cowles and Joseph L. Buckley (organizers and promoters of what is known as the Central Brick Company), the Central Brick Company, the Southern Indiana Clay Products Company, the officers and stockholders of said company, the Huntingburg Dry Press Brick Company, the officers and stockholders thereof, the Coshocton Brick Company, of Coshocton, Ohio, the officers and stockholders in said company, the Central Trust Company of Illinois, the Central Trust Company of Illinois as trustee under the trust deed hereinafter mentioned, Aksel K. Bodholdt, co-trustee with the Central Trust Company of Illinois, Eldo W. Wood, trustee, successor of Aksel K. Bodholdt, trustee, the Citizens Trust Company of Huntingburg, Indiana, receiver for the Central Brick Company, William E. Menke, creditor and stockholder of the Huntingburg Dry Press Brick Company and of the Central Brick Company, and as plaintiff in cause No. 7663, Ray P. Olinger, plaintiff in cause No. 7750 and John J. Dowdle, appellant herein, and various other creditors and lienholders.

A brief statement of the facts will afford a clearer understanding of the pleadings and issues here involved and which may be stated thus: That prior to January 1, 1928, LaMonte Cowles, an attorney of Burlington, Iowa, and Joseph L. Buckley of Chicago, conceived the idea of perfecting a merger of several brick plants into one large corporation. Buckley, being more or less familiar with the brick business and connected with a certain brick company located in Chicago, was the moving party in perfecting this new corporation. He went to Huntingburg, Indiana, and secured an option to purchase fifty-one per cent of the common stock of the Southern Indiana Clay Products Company for the cash price of $30,000.00. He also secured an option to purchase the entire capital stock of the Huntingburg

Dry Press Brick Company located at Huntingburg, Indiana, for the cash price of $130,000.00. He secured an option to purchase the physical property and the going business of the Coshocton Brick Company located at Coshocton, Ohio, for the cash price of $100,000.00, for the plant and business, plus cost price of the inventories and manufactured stock on hands and in process of manufacture. He also secured an option to purchase the property of a brick company located at Veedersburg, Indiana, for the cash price of $200,000.00. All of these options were authorized by the proper board of directors and officers of the several companies and the stockholders thereof. These options, under a provision contained therein, were renewed from time to time until finally exercised, the exact number of times is not clearly shown. Neither Mr. Cowles nor Mr. Buckley were financially able to finance this proposed company and after having secured the various options, presented the proposition to the Central Trust Company of Illinois for the purpose of securing financial aid in perfecting the new company. The negotiations, hereinafter recited, were conducted with one Joseph E. Lindquist, vice-president of said bank. It was explained to Mr. Lindquist that the purpose of Mr. Cowles and Mr. Buckley was to consolidate and merge the several individual brick companies above mentioned into one large company which they had organized and known as the Central Brick Company of Indiana. That the Central Brick Company desired to borrow $150,000.00 of the bank, the same to be used to purchase said property and that said company proposed to secure the bank by issuing bonds secured by a trust deed upon all of the property purchased and to pledge the bonds thus issued as collateral security for said loan; and as a result of the several conferences between Buckley and Cowles and the officers of the bank, the bank agreed to

and did place to the credit of the Central Brick Company of Indiana, the sum of $150,000.00, the same to be secured by $250,000.00 of the bonds of said company, said bonds to be secured by a trust deed on the properties taken over.

This transaction took place on or about the sixth day of February, 1928. Prior to that date, to wit, on January 10, 1928, Cowles and Buckley had caused the certificate of incorporation of the Central Brick Company of Indiana to be issued by the Secretary of State of Indiana. The articles of incorporation of said company provided that the common stock should consist of 50,000 shares of no par value to be sold at $10.00 per share, and $500,000.00 of preferred stock to consist of 5,000 shares of $100.00 each.

The $150,000.00 placed to the credit of the Central Brick Company as above set forth, was in fact used to purchase the property taken over by the Central Brick Company. Mr. Buckley did not exercise the options as originally written but secured a modification as follows:

In the case of the Southern Indiana Clay Products Company, the negotiations were carried on with four stockholders of said company, who owned fifty-one per cent, or 347 shares, of the common stock of that company. Instead of paying $30,000.00 cash, it was agreed that for the 347 shares of the common stock, William E. Menke and Charles Moenkhaus were to receive $10,-000.00 par value of the first mortgage bonds of the Central Brick Company and $6,000.00 preferred stock of said company. Daniel Reutepohler and Russell R. Reutepohler were to receive $10,000.00 of first mortgage bonds of the Central Brick Company and $4,000.00 of the preferred stock of said company and for 100 shares of preferred stock of the Southern Indiana Clay Products Company held by William E. Menke, said Menke

was to receive in exchange therefor $10,000.00 of first mortgage bonds of the Central Brick Company. Said four stockholders of the Southern Indiana Clay Products Company transferred their shares to the Huntingburg Bank, as trustee, to hold the same until the stocks and bonds were delivered to the bank for said stock. It seems, however, that the bank transferred the common and preferred stock to Mr. Buckley upon receiving the preferred stock from the Central Brick Company and before receiving the bonds mentioned in the agreement, and through this arrangement, Mr. Buckley obtained the controlling interest in the Southern Indiana Clay Products Company without delivering the bonds as agreed.

As to the Huntingburg Dry Press Brick Company, this option was modified to the effect that they would accept $100,000.00 cash, $6,000.00 of first mortgage bonds, $24,000.00 par value preferred stock and 240 shares of the common stock of the Central Brick Company.

The Coshocton option was modified to the effect that they would accept $32,600.00 cash, $30,000.00 of first mortgage bonds, $37,000.00 preferred stock and 340 shares of the common stock as payment for the plant and property, other than the inventory and supplies, and that they would accept a note from the Central Brick Company for the inventory and supplies, the amount to be ascertained, based upon the cost of the materials inventoried. The amount of the note was fixed at $30,583.94 which was executed and delivered and is still retained by them. The cash payment of $32,600.00 was made and accepted by the Coshocton interests which they still retain. The common and preferred stock was issued to the parties designated, which stock is still retained by them but the $32,000.00

of bonds have never been delivered or received as provided in said option.

The $100,000.00 paid to the Huntingburg Dry Press Brick Company and the $32,600.00 paid to the Coshocton interests, was paid out of the $150,000.00 placed to the credit of the Central Brick Company by the Central Trust Company of Illinois, above mentioned. The stockholders of the Huntingburg Dry Press Brick Company, transferred all the common stock in that company to Mr. Buckley and Mr. Cowles, and thereafter new officers were elected and all the property transferred to the Central Brick Company. The property of the Coshocton Brick Company was transferred, by deed and by bill of sale direct to the Central Brick Company.

The option as to the brick company located at Veedersburg was never exercised. All of the above transactions took place in the first part of February, 1928, and the Central Brick Company took charge of all the property of the Southern Indiana Clay Products Company, the Huntingburg Dry Press Brick Company, and the Coshocton Brick Company of Coshocton, Ohio, with full management and control, and operated same as the Central Brick Company until the eleventh day of October, 1928, when the Central Trust Company of Huntingburg, Indiana, was appointed receiver.

After the Central Brick Company came into possession of all of the above properties, in pursuance to the agreement with the Central Trust Company of Illinois, above mentioned, it executed a trust deed covering all of the underlying properties to secure a bond issue of $250,000.00, naming in the trust deed, the Central Trust Company of Illinois and Aksel K. Bodholt, trustees therein, and the bonds secured by said deed were issued and delivered to said trust company to be held by them as collateral security for the $150,000.00 loan heretofore mentioned.

The loan of $150,000.00, by the Central Trust Company of Illinois to the Central Brick Company, was evidenced by the note signed by the Central Brick Company and endorsed on the back thereof by Cowles and Buckley, as guarantors. This note was purchased by appellant John J. Dowdle and the $250,000.00 bonds, held by the Central Trust Company of Illinois as collateral security therefor, were transferred to said Dowdle, appellant herein, who now alleges he is the owner, in due course, in good faith and for value, of the same. It is this trust deed and these bonds that were declared null and void by the judgment of the lower court, from which judgment this appeal was taken.

## The Pleadings.

This cause is a consolidation of four different causes; the first complaint being entitled the *Uhl Pottery Company* v. *The Southern Indiana Clay Products Company,* being cause No. 7249, by which complaint, the Uhl Pottery Company sought to establish and quiet title to an easement across certain property owned by the Southern Indiana Clay Products Company, and no question is involved in this appeal relative to said action. The second complaint was entitled *William E. Menke* v. *Central Brick Company,* being cause No. 7663, filed on the tenth day of October, 1928. Mr. Menke was the owner of bonds, preferred and common stock, in the Central Brick Company, and alleged in his complaint, among other things, that the Central Brick Company is a corporation under the laws of the State of Indiana, and owns and controls and operates two brick manufacturing plants within the city of Huntingburg, and clay mines in and near the vicinity of Huntingburg, and that the real estate, brick plants and property of the defendant company is of the probable value of $300,-000.00 and is indebted to its employees for labor

rendered, in the sum of about $2,500.00 which is due and unpaid, and that the defendant has not available funds with which to pay the same. That on October 10, 1928, a suit was filed in Dubois County, entitled *Brendle and Patberg* v. *Central Brick Company,* asking judgment for $1,600.00, and asking for foreclosure of a mechanic's and materialmen's lien on the real estate of the defendant located in the ctiy of Huntingburg, and that said cause is now pending and summons has been issued thereon and is in the hands of the sheriff for immediate service; that the defendant company is indebted in the sum of $30,000.00 to Charles Moenkhaus, William E. Menke, Daniel Reutepohler, and Russell R. Reutepohler on a contract for the delivery of its mortgage bonds to said amount, and which bonds, under said contract, should have been delivered by the defendant to said parties more than six months ago; that the defendant is indebted in large and unknown amounts to various other creditors in the vicinity of Huntingburg and that there are notices of other mechanic's liens filed against the defendant's real estate and recorded in the recorder's office of Dubois County, which claims are unpaid, and that the defendant is likewise indebted in large amounts to persons in the vicinity of Chicago. That the defendant owns operates and controls a manufacturing plant at Coshocton, Ohio, of the probable value of $200,000.00 and that the defendant owes creditors in that state on claims growing out of the operation of said manufacturing plant, the amount being unknown to the plaintiff, and that multiplicity of law suits by creditors and claimants is threatened against the defendant unless a receiver is appointed. The plaintiff further alleged that the defendant company undertook and attempted to execute a trust deed or mortgage upon all of its property to secure the payment of $250,000.00 of the bonds of the

said defendant. That the defendant undertook to sell and dispose of the bonds and hypothetically pledged the same. That said bonds so attempted to be executed, were done so without having first procured the consent in writing, as required by the law of Indiana, of three-fourths of the outstanding and issued preferred stock of said defendant, and did not have the written consent of said preferred stockholders at the time of the execution of said mortgage and notes; that said mortgage was executed to the Central Trust Company of Illinois, which company had heretofore advanced $150,000.00 by way of a loan to the defendant to enable it to pay in part for its Ohio and Indiana brick plants, and that said trust company retained and held $250,000.00 of said mortgage bonds as collateral security for the payment of said loan and now holds the same as security, and prayed for the appointment of a receiver of all of its property in Dubois County without notice.

On October 11, 1928, the Circuit Court of Dubois County, Indiana, upon the above complaint, appointed the Citizens Trust Company of Huntingburg, Indiana, Receiver of the Central Brick Company.

The third suit is entitled *Ray P. Olinger et al.* v. *Central Brick Company,* being cause No. 7750. This was a suit to foreclose mechanic's lien, alleging many of the same facts that were alleged in the Menke case, and prayed for the appointment of a receiver. The Central Trust Company of Illinois, as trustee, and Aksel K. Bodholdt, as trustee, were made defendants in this cause.

To this complaint, Aksel K. Bodholdt, trustee named in the trust deed, filed a cross-complaint in which he stated that the Central Trust Company of Illinois refused to join in the cross-complaint and alleged the execution and delivery of the trust deed and the bonds secured thereby, the breach of covenants by the Central

Brick Company to pay interest on the bonds, taxes, and to keep the property free of mechanic's liens, etc., and the trustee's consequent declaration that the entire principal amount of the bonds was due and payable, the necessity of foreclosure and incurring of expenses and attorney's fees in such connection. A copy of the trust deed was attached to and made a part of the cross-complaint. It joined a large number of persons as defendants, alleging that they claimed some interest in the property of the company, and that such interests, if any, were subordinate to the lien of the mortgage. Answers from such persons disclosing their interests as well as the foreclosure of the deed were prayed.

The Citizens Trust Company, Receiver, answered this cross-complaint to foreclose in three paragraphs: (1) That the mortgage was not in fact executed by the Central Brick Company, nor authorized by it; (2) that there was no consideration; and (3) that the consideration, if any, had failed.

On May 2, 1929, the receiver of the Central Brick Company filed a petition to sell the assets and wind up the estate and for other relief. This cause was entitled *Citizens Trust Company, Receiver* v. *Central Brick Company,* being cause No. 7752.

On June 25, 1929, the receiver filed an amended petition to sell the assets and wind up the estate, reform a deed and quiet title, and to consolidate actions. It was upon this petition that the three above mentioned causes were consolidated with cause No. 7752. In the amended petition, which is very lengthy and contains much that is not material to the questions involved in this appeal, it alleged that the Central Brick Company was insolvent, that a receiver's sale was desirable to avoid any period of redemption, and named certain persons (the same ones made defendants in the trustee's cross-complaint to foreclose) who were claiming some

interest in the properties that were clouds on the title of the real estate of the Central Brick Company and should be determined; and prayed that such interests be set up by answer and the unfounded claims quieted, and that the receiver be given authority to sell the properties and the priorities as determined to attach to the proceeds.

Leo J. Hoing, Trustee of the estate of Hugo C. Rothert, bankrupt, as such trustee, filed answer to the receiver's amended petition to sell, in which he claimed in substance, that his bankrupt, Hugo C. Rothert, was one of the stockholders in the Huntingburg Dry Press Brick Company and was to receive in exchange for his stock in said company, out of the $6,000.00 of mortgage bonds, which were a part of the purchase price of the stock of said company, the sum of $600.00 of said bonds in exchange for his $600.00 par value of said stock.

Alvin F. Sutheimer, Trustee in bankruptcy, for Gilbert C. Landgrebe, filed a similar answer, except that he claimed to be entitled to $1,100.00 of the bonds of the Central Brick Company in exchange for a similar amount of stock in the Huntingburg Dry Press Brick Company.

On June 20, 1930, Eldo W. Wood of Huntingburg, Indiana, was appointed trustee under the trust deed in lieu of Aksel K. Bodholdt who had died, and substituted in his place and stead, in each of the consolidated causes.

There were several other answers by the stockholders, lienholders, and bondholders setting up their various claims on the property of the Central Brick Company.

On June 20, 1930, John J. Dowdle, appellant herein, filed a petition to be made a party defendant to the receiver's amended petition to sell in cause No. 7752, and that upon said petition was admitted and filed

answer in two paragraphs: (1) A general denial; and (2) he alleges the execution of the trust deed herein mentioned, which trust deed was made a part of and attached to the cross-complaint filed by Aksel K. Bodholdt, Trustee, which cross-complaint alleged the execution thereof and the recording of the same in the proper records of Dubois County, by which trust deed, the Central Brick Company conveyed to the Central Trust Company of Illinois and Aksel K. Bodholdt, as trustees, its certain properties therein described to secure an authorized issue of its first mortgage bonds in the aggregate principal amount of $250,000.00, all dated April 2, 1928, and due April 1, 1938, with interest at the rate of six per cent per annum, payable semi-annually, and that said trust deed is the trust deed that is described in the receiver's amended petition to sell and that all of said authorized bonds with interest coupons representing the semi-annual installment of interest thereon, were executed and issued by the Central Brick Company and are now outstanding in the hands of the legal holders thereof; and there was due and payable on each of said bonds on the first day of October, 1928, and also on the first day' of April, 1929, an installment of interest, evidenced by the coupons attached thereto, and falling due on those dates, which was not paid, but default was made by said Central Brick Company in the payment of said interest, and which default now continues; and that by the terms of said trust deed, that in case default be made in the payment of any interest on any of the bonds thereby secured and outstanding, and such default shall continue for a period of thirty days, said trustees may by notice in writing, delivered to said Central Brick Company, declare the principal of all of the bonds to be secured and then outstanding, to be due and payable immediately, and that by reason of default in the payment of interest due

as aforesaid on October 1, 1928, and as such default had continued for more than thirty days, said trustees did by notice in writing, duly delivered to said Central Brick Company declare all of said bonds to be due and payable immediately, and they thereby became so due, and now remain unpaid in the hands of the holder thereof. Appellant further alleged other numerous defaults not necessary to set out. That after said bonds were thus declared presently due, the holders of more than one-fourth in amount thereof, pursuant to the terms of said trust deed, requested the trustee thereof to foreclose the same, whereupon the Central Trust Company of Illinois, having refused to join with Aksel K. Bodholdt, as trustee, in such foreclosure, the latter as trustee filed the cross-complaint referred to in the amended petition of the receiver to sell, praying, among other things, for a foreclosure of the trust deed as a first and prior lien to the property of the Central Brick Company located in Indiana, and that other persons claiming liens might be required to set forth their title or interest in the mortgaged property in opposition to the lien of the trust deed, if any, and that such interests be adjudged inferior to the lien of the trust deed and that a receiver might be appointed, or the pending receivership be extended. Appellant further alleged that the lien of the trust deed is superior and prior to the expenses of any receivership proceedings had prior to or in addition to such as have properly been had under the aforesaid cross-complaint of the said Bodholdt, trustee, and that any sale of the property of the Central Brick Company should preserve the priority of said trust deed lien, and that the lien of the trust deed is superior to all other liens or claims against the property of the Central Brick Company.

He further alleged that he is the holder, in due course, in good faith and for value, of all of said bonds

described in said trust deed, in the aggregate principal amount of $250,000.00 and that he derives his title to said bonds through a holder in due course, in good faith and for value, of said bonds, and is not himself a party to any fraud or any illegality affecting said bonds.

On June 20, 1930, the defendants, Coshocton Brick Company, Monford D. Custer, Clara C. Gallagher, Louis P. Gallagher, Sarah M. Gallagher, Allen W. Holmes, and James P. Severns, filed their answers to the receiver's amended petition to sell, in cause No. 7752, wherein they consented to the sale of the property at Huntingburg Indiana, free and clear of all liens of creditors, without prejudice to the rights of these answering defendants to the property at Coshocton, Ohio, for which the Central Brick Company is asserting title, and these defendants deny the lien and claim of each and all of the parties in interest in this cause upon any of the property in controversy, and especially upon the property at Coshocton, Ohio. They also filed separate answers in the Olinger case in general denial.

On June 26, 1930, Albert D. Reutepohler and others answered the amended petition of the receiver in cause No. 7752, wherein they set up their claims for a certain number of first mortgage bonds and preferred stock in the Central Brick Company in exchange for the 347 shares of common stock in the Southern Indiana Clay Products Company which was sold to the Central Brick Company heretofore mentioned and on the same day, Eldo W. Wood, trustee, filed his answer to the receiver's amended petition in said cause.

On June 26, 1930, the Coshocton Brick Company and the other parties mentioned, in their answers to the amended petition of the receiver to sell, filed their separate answers to the cross-complaint originally filed by Bodholdt, Trustee (Eldo W. Wood being now substituted in place of Bodholdt), wherein they allege:

(1) The trust deed and bonds secured thereby were not in fact executed by the Central Brick Company; that the execution thereof was not authorized by the Central Brick Company and has never been in fact legally ratified or authorized.

(2) There was no consideration received by the Central Brick Company for said mortgage and/or the bonds purported to be secured thereby and no consideration was paid to the Central Brick Company or to anyone for its use for said mortgage and/or the bonds purported to be secured thereby.

(3) All the consideration given or purporting to have been given therefor has wholly failed.

(4) The mortgage set up by the petitioner and the bonds purported to be secured thereby are void, and their purported execution was procured by fraud. The fraud alleged in this answer in substance is as follows:

That prior to the year 1928, one LaMonte Cowles and Joseph L. Buckley associated themselves together in the fraudulent scheme to obtain various brick manufacturing properties by pretending that they were forming a merger or combination of various valuable and profitable operating brick plants and by falsely representing to the owners of the several properties, including the property of these defendants, that they had already acquired and paid for or had the funds to pay for the other properties being put into the combination and by falsely representing to these defendants that they had sufficient funds to pay for the property being conveyed to them and that the property of these defendants would be purchased and paid for in cash. The said Cowles and Buckley were in fact conspiring to obtain the property of these defendants without paying therefor and their purpose was to promote and organize the merger company to issue securities and purported obligations for the common purpose that the said Cowles

and Buckley should be able to obtain money and profit upon the scheme for themselves. That in pursuance of such scheme and purpose, the said Cowles and Buckley, by various fraudulent representations did obtain from the Coshocton Brick Company an apparent deed to its property signed by its officers, purporting to convey its property to the Central Brick Company. That Cowles and Buckley were proposing to purchase the property of the Coshocton Brick Company for $130,-000.00 cash and by authority of its directors and stockholders, agreed to sell for said amount, and this was the only authority given by the Coshocton Brick Company by its board of directors and stockholders for the sale of its property and said deed was to be delivered and become effective upon payment of the cash purchase price agreed upon, but the said Cowles and Buckley procured said deed without any delivery thereof and without payment of the purchase price, and the deed was recorded as a valid instrument by the said Cowles and Buckley. That by false representations and practices, Cowles and Buckley procured the apparent consent of certain stockholders of the Coshocton Brick Company to accept pretended securities of the Central Brick Company, in lieu of cash, for said property and pursuant to such fraudulent scheme, certain officers of the Coshocton Brick Company did purport to deliver its property to the Central Brick Company, said officers of the Coshocton Brick Company being ignorant of the fraud and falsity of the representations and practices of said Cowles and Buckley at the time.

That after obtaining the apparent deed from the Coshocton Brick Company to the Central Brick Company, said Cowles and Buckley so maneuvered that said Central Brick Company apparently executed the mortgage in question and the bonds secured thereby, but that said mortgage and bonds were not in fact executed

pursuant to any legal authority given by the Board of Directors of the Central Brick Company, but that Cowles and Buckley falsified and manufactured record entries for the Central Brick Company showing purported authority in themselves as officers of said company, to execute the mortgage and bonds in question. That prior to obtaining any apparent interest in the Coshocton Brick Company, Cowles and Buckley became indebted to the Central Trust Company of Illinois, for credits extended, and said trust company entered into an agreement with Cowles and Buckley to extend further credit and to do certain financing for them to enable them to carry out their promotion and schemes for obtaining the property of the Coshocton Brick Company. They do not charge, however, that the Central Trust Company or its officers, knowingly and purposely, assisted said Cowles and Buckley in their scheme, but they did aid said Cowles and Buckley in their promotion, by letters and otherwise recommend Cowles and Buckley to various stockholders and parties in interest, in turning over their property to Cowles and Buckley. That the Central Trust Company was informed as to the plans and programs of Cowles and Buckley and knew of their finances and lack of funds with which to purchase the properties, and knew that they were promoters of a reckless scheme and program, and with such knowledge, advanced to Cowles and Buckley as much as $150,000.00. That after the execution of the trust deed and bonds in question, Cowles and Buckley, being then indebted to the Central Trust Company in the amount of $150,000.00 for funds advanced, these defendants are informed and believe that the Central Trust Company appropriated to itself the entire issue of said bonds and claimed to hold them as collateral security for said indebtedness, and no authority by the Central Brick Company or anyone else in proper author-

ity was ever given for issuing or pledging of any of said bonds to the Central Trust Company or anyone else, and that on account of said Aksel K. Bodholdt and the Central Trust Company being named as trustees, and the Central Trust Company being named as registrar of the bonds, and by virtue of their position and their superior advantage over others in interest, appropriated the bonds to themselves wholly without right. That the properties in Dubois County were obtained in substantially the same manner and under like circumstances.

The defendants further charged that the purported mortgage is void and that the purchase price of the Coshocton property, in the amount of $100,000.00 is unpaid and that they have and now retain a vendor's lien upon the Coshocton property to the full extent of the unpaid purchase price together with interest thereon at the rate of six per cent from February 1, 1928.

They further state that they are entitled to have the title to the property of the Coshocton Brick Company quieted against all claims of the petitioner and of the Central Brick Company, the Central Trust Company of Illinois, and Eldo W. Wood as trustee, and to a release of record of the mortgage as to the Coshocton property. They further charge that Cowles and Buckley falsely represented that they were men of affairs and that they represented to own and to have paid for the property at Veedersburg, Indiana, of the value of $200,000.00, and that said plant was being put into the combination and becoming a part of the Central Brick Company, all of which statements were false and fraudulent. That said Cowles and Buckley represented to these defendants that they were purchasing and paying for in cash the common stock of the Central Brick Company at $10.00 per share in the amount of over $200,000.00, which amount was going into the treasury and becoming

a part of the assets of the Central Brick Company, all of which statements were in fact false. That these defendants believed and acted upon said false and fraudulent representations. That they would not have acted upon said statements and disposed of their property had they known that said statements were false, and that they had no way of ascertaining the falsity of said statements. They further state that proceedings were instituted in the Circuit Court of Dubois County, Indiana, pursuant to which receivers were appointed and qualified and took charge of the affairs of the Central Brick Company, and particularly of the property in Indiana, and in connection with such proceedings, ancillary proceedings were instituted by virtue of which receivers were appointed in the State of Ohio to take charge of the property of the Coshocton Brick Company, which receivers have been and are now in charge of said property. They further state that the Coshocton Brick Company owned all of its property in fee simple and also owned a stock of supplies and miscellaneous personal property and was, prior to the conveyance thereof to Cowles and Buckley, a prosperous and going concern of the value of one hundred and thirty thousand dollars ($130,000.00). That all of the answering defendants herein were stockholders in said company. That after the agreement to sell said property to Cowles and Buckley they paid to the Coshocton Brick Company on said purchase price, the sum of $30,000.00 and no more, which payment was received and accepted without knowledge of the fraud and deceit practiced upon them and in the belief that the full purchase price was to be paid in due course. That after discovering the fraud and deceit on the part of Cowles and Buckley, the Coshocton Brick Company and these defendants have demanded that the original sale in all things be carried out and failing to do so that all of its property and

rights be restored without prejudice and free of the claims of all other interest, and the Coshocton Brick Company has offered to do entire equity in the premises. They further allege that the Central Trust Company of Illinois holds various securities and collaterals for its advances and loans to Cowles and Buckley other than the purported security of the bonds and mortgages in question, and that in equity it should be required to content itself with such collateral other than the bonds and mortgages in question and should be required to surrender said bonds and mortgages free from all claims in order that the same may be cancelled.

Other pleadings were filed by various interested parties which are unnecessary to mention except that after the trial was begun on the twenty-eighth day of June, 1930, the defendant, Elda W. Wood as trustee, filed a second paragraph of answer to the receiver's amended petition to sell, to the effect that he, as substituted trustee under the trust deed, is entitled to compensation for his services and that the same be a first lien upon all of the proceeds derived from the sale of the properties, and that on July 21, 1930, the defendant, John J. Dowdle, filed written objections to any order of sale of any of the assets of the Central Brick Company until after the validity and priority of said mortgage and the lien created thereby and the indebtedness thereby secured had been fully adjudicated.

A request for special findings of facts and conclusions of law thereon were filed by various parties. On August 12, 1930, the Citizens Trust Company and the Ohio defendants filed a separate answer of *non est factum* to the cross complaint of Eldo W. Wood, trustee. This plea is based upon the allegation that the notary public taking the acknowledgement of the execution of the mortgage or trust deed was at the time a stockholder in the Central Trust Company of Illinois and an

employee of said company and was under the supervision of Aksel K. Bodholdt, vice-president and director of the Central Trust Company and was therefore beneficially interested in the attempted mortgage and security and therefore the attempted acknowledgment was wholly void and the record thereof invalid and not notice to anyone. And second, that the attempted execution of the mortgage to the Central Brick Company and the pledging of the $250,000.00 of bonds was an attempt to prefer said debt of $150,000.00 to the Central Trust Company upon which LaMonte Cowles and Joseph L. Buckley, directors and officers of the Central Brick Company were sureties and guarantors and which said debt they were obligated to pay and which indebtedness was for their individual benefit and therefore void and prohibited under the laws of Indiana. Third, that at the time the stockholders and directors of the Central Brick Company sought by minutes to authorize the execution of the mortgage on behalf of the Central Brick Company, said company had not filed with the Recorder of Montgomery County, Indiana, wherein the home office of said company was located, a copy of its articles of association and was not at that time a body corporate and had no authority to execute the bonds and mortgage in question. That the Central Brick Company at no time, by its directors and stockholders, authorized the borrowing of the $150,000.00 from the Central Trust Company of Illinois and at no time authorized the execution of the bonds and mortgage in question nor authorized the officers of said corporation to mortgage or pledge any of the assets of the Central Brick Company to the Central Trust Company of Illinois or any other person, nor did the stockholders or directors of the Central Brick Company authorize any such acts.

That on December 1, 1930, the trial judge signed,

filed, and returned in open court, his special findings of fact, and stated four conclusions of law thereon. Proper exceptions were taken to each conclusion of law by appellant and upon motion of the Citizens Trust Company, Receiver, judgment was returned in accordance with the conclusions of law.

The cause was tried by the court without a jury and the issues were decided for appellees and against appellant. The decree in part was that the mortgage and the bonds secured thereby and the $150,000.00 loan by the Central Trust Company to the Cental Brick Company were all null and void, and appellant and the trustees and the persons claiming part of said bonds were ordered to deliver the mortgage and bonds to the receiver, and the receiver was directed to cancel the same and release of record the mortgage in the Recorder's office of Dubois County, Indiana. The decree also ordered the receiver to sell the property on January 15, 1931, free and clear of all the rights, interests, liens, and claims of each and all the parties in the consolidated causes, and provided for the investment of the proceeds of the sale pending any appeal. The decree further provided that all claims based upon actions appertaining to the Ohio property of the Central Brick Company did not affect the Indiana property but ought to be confined exclusively to the property at Coshocton, Ohio.

Appellant filed his motion for a new trial on the ground, first, that the decision of the court is not sustained by sufficient evidence, and second, that the decision of the court is contrary to law, which motion was overruled by the court and proper exceptions reserved by the appellant. The assignment of error in this court by appellant John J. Dowdle is: (1) The overruling of his motion for a new trial; (2) the court erred in each conclusion of law upon the special findings of fact; and

the (3), (4), (5), and (6) assignments of error related to the (1), (2), (3), and (4) conclusions of law, assigned separately.

In addition to the facts heretofore set out, additional facts should be stated, all as shown by the special findings. The minute book shows that the articles of incorporation of the Central Brick Company were under the General Corporation Act of 1921, and acts amendatory and supplemental thereto, and after the articles of incorporation had been submitted to the Secretary of State of Indiana, they were approved by him, and on January 14, 1928, he issued his certificate authorizing the Central Brick Company to transact business under the articles.

The articles of incorporation provided that the first annual meeting of the corporation should be held at Crawfordsville, Indiana, the principal office and place of business, as designated therein on January 23, 1928, and on said date there was held a first meeting of the incorporators and subscribers to the capital stock pursuant to written waiver of notice and consent signed by all of the incorporators and subscribers, and at which meetings all of them were present in person or by proxy. The minutes contained, and there had been signed prior to the date of such first meeting, a subscription agreement showing that the following persons had agreed to take and pay for, either in cash or on such terms as the board of directors should determine, the shares of stock set opposite their names, as follows:

| | Preferred | Common |
|---|---|---|
| LaMonte Cowles | 10 | 100 |
| J. L. Buckley | 3,010 | 47,600 |
| J. B. Casey | ........ | 10 |
| H. W. Buckley | ........ | 10 |
| D. O. Krietzman | ........ | 10 |
| Otto G. Fifield | ........ | 10 |

The minutes of the first meeting of incorporators and subscribers showed that there was present and accepted by a resolution adopted by the unanimous vote of all such persons, a proposition of Joseph L. Buckley, offering to turn over to the corporation, options which he had procured for the purchase of the properties of the Huntingburg Dry Press Brick Company, the Southern Clay Products Company, and the Coshocton Brick Company, and to turn over such properties to the Central Brick Company by warranty deed, he (Buckley) to receive in exchange therefor 2,400 shares of the preferred stock, 47,500 shares of the common stock and $160,000.00 in first mortgage gold bonds to be secured by deed of trust on such properties, being a part of the total issue of $250,000.00 to be issued under the trust deed, the stock and bonds to be delivered to Buckley in proportion to the value of the several plants as they were turned over to the corporation free and clear of liens. The minutes further show by a resolution adopted at that meeting, that the directors were authorized, upon the corporation acquiring title to the above property in accordance with the offer and acceptance, to issue $250,000.00 first mortgage gold bonds to be dated April 2, 1928, bearing six per cent interest secured by first closed mortgage upon such plants, such bonds to mature on or before April 1, 1938, naming therein the Central Trust Comany of Illinois and Aksel K. Bodholdt, as trustees, and that the directors and officers take all necessary steps for the carrying out of the foregoing resolutions.

The articles of incorporation of the Central Brick Company provided that the business and property to be taken over by the corporation were as follows:

"The company has contracts for, and expects to take over, subject to the approval of the proper officers of the State of Indiana, the real estate, build-

ings, machinery and other assets of the following corporations: The Veedersburg Paver Company of Veedersburg, Indiana, Huntingburg Dry Press Brick Co., of Huntingburg, Indiana, Southern Indiana Clay Products Co. of Huntingburg, Indiana, the Coshocton Brick Company, of Coshocton, Ohio."

On January 23, 1928, stock certificates were issued and delivered by said corporation to LaMonte Cowles for 10 shares and to Joseph L. Buckley for 2,410 shares, and thereafter on the same day, Cowles and Buckley signed and delivered to the company their consent in writing to the execution and delivery by the company to the Central Trust Company of Illinois, and to Aksel K. Bodholdt, as trustees, of a mortgage or deed of trust upon all or any of the property of the company then or thereafter owned by it, to be dated April 2, 1928, to secure an issue of first mortgage bonds not in excess of $250,000.00 and to the issuance and sale of said bonds. The above stock subscription agreement was accepted, by-laws adopted providing, among other things, for a board of directors consisting of seven members, a majority of whom should constitute a quorum, and that all contracts, leases, notes, commercial papers, etc., should be signed by the president and countersigned by the treasurer.

That on the same day, January 23, 1928, and after the meeting of the stockholders, there was held a first meeting of the board of directors of the Central Brick Company. The minutes show that this meeting was held pursuant to written consent and waiver of notice, and that all directors were present. The record of the minutes showing the above facts are as follows:

"Minutes of the first meeting of the Board of Directors of Central Brick Company, held at the offic of said corporation at Crawfordsville, Indiana, this 23rd day of January, A. D. 1928, at 3 o'clock P. M., pursuant to the following waiver of notice

and consent to the holding of said meeting signed by all of the Directors of this corporation present on the records of said meeting to wit:

We the undersigned, being all of the Directors of Central Brick Company named in the Articles of Association of said corporation, do hereby severally waive notice of the time, place and purpose of the first meeting of said Board of Directors and do hereby call said meeting and consent to the holding thereof at this time and place, to wit: At the office of said corporation in the City of Crawfordsville, Indiana, on the 23rd day of January, A. D. 1928, immediately following the adjournment of said first meeting of the incorporators and subscribers to the stock of said corporation, and we do hereby severally consent to the transaction of any and all business that may come before said meeting.

LaMonte Cowles 810 N. Fifth Street, Burlington, Ia.

J. L. Buckley, 6540 Minerva Street Chicago, Ill.

J. B. Casey, 400 W. Main St., Crawfordsville, Ind.

H. W. Buckley, 6610 S. Kimbark Avenue, Chicago, Ill.

D. O. Kreitzman, Crown Point, Indiana.

H. F. Pronger, 1369 Hyde Park Blvd., Chicago, Ill.

Otto G. Fifield, Crown Point, Indiana."

The minutes of this meeting show that LaMonte Cowles was elected President and Treasurer and Joseph L. Buckley, Secretary, and that all resolutions and motions adopted at the first meeting of the incorporators and subscribers to the capital stock of the corporation were re-enacted and adopted by the Board of Directors. The articles of incorporation, as certified by the Secretary of State, were filed for record with the County Recorder of Montgomery County, Indiana, on January 28, 1928. That on or about the sixth day of February, 1928, Cowles and Buckley, on behalf of the Central Brick Company, paid $100,000.00 out of the $150,000.00 credit made available by the loan to the trustee for the stockholders of the Huntingburg Dry Press Brick Company. This payment was by check,

signed Central Brick Company, by Jos. L. Buckley and countersigned by LaMonte Cowles, President, and in addition thereto $24,000.00 par value of preferred stock out of Buckley's 2,410 shares and 240 shares of common stock were also delivered to the trustee for said stockholders and under the agreement with said stockholders, $6,000.00 of first mortgage bonds were to be delivered when issued in consideration of which all the capital stock of the Huntingburg Dry Press Brick Company was transferred to Cowles and Buckley. At the time of this transaction all of the stockholders of the Huntingburg Dry Press Brick Company knew there was to be a bond issue upon the property of the Central Brick Company and at least one of them (William E. Menke) knew that the cash paid came from the $150,000.00 loan secured by the pledge of bonds to be issued. The various stockholders of the Huntingburg Dry Press Brick Company received their pro rata share of cash and stock, and as to the bonds, they have recognized the validity of the bond issue by their stipulation entered into between James O. Sanders, receiver of the Huntingburg Bank as trustee of the holder of $6,000.00 first mortgage bonds of the Central Brick Company and appellant herein, which stipulation in effect acknowledged the claim of the Huntingburg Bank, as trustee, as the holder of $6,000.00 of said bonds and that in the event that the appellant was a successful bidder at the receiver's sale of all of the property of the Central Brick Company and made use of the bonds in making payment of the purchase price, that the appellant agreed to pay, in cash on his bid, enough to satisfy all superior liens to the trust deed and to pay in cash on said bid a further sum sufficient to pay persons having equal priority with him, including Sanders as receiver, a per cent on their claim equal to the per cent

that Dowdle would receive on his claim if the purchase price under said bid were paid wholly in cash.

The Reutepohlers entered into a similar stipulation with appellant Dowdle, so it will be observed from these stipulations that all persons claiming an interest in the property located in Indiana, by virtue of the bond issue, except the Citizens Trust Company, Receiver, general creditors and the Coshocton interests, have acknowledged the validity of the bond issue and the mortgage securing the same. The Central Brick Company complied with the agreement of purchase with the Huntingburg Dry Press Brick Company and the Coshocton interests in all respects except that they did not deliver the bonds as provided for in their agreement to purchase, and the stockholders in the Huntingburg Dry Press Brick Company, the Southern Indiana Clay Products Company, and the Coshocton Brick Company have each retained the stock issued to them and the cash paid, and have not tendered back either the stock so issued to them nor the cash paid to them.

The original note for $150,000.00 signed by the Central Brick Company and endorsed as guarantors by Cowles and Buckley, was dated May 25, 1928, and was a demand note. This note was renewed by a time note due July 2, 1928, and during July, 1928, another time note was given in renewal thereof, due October 1, 1928. On March 25, 1929, the last mentioned note was sold and the $250,000.00 in bonds pledged to secure the same, delivered by the Central Trust Company of Illinois to appellant John J. Dowdle, for the principal and accrued interest, in the sum of $153,645.95 The Central Brick Company note was retained in the files of the bank with a notation that it should be delivered to Dowdle and endorsed without recourse whenever he should request it. Appellant Dowdle paid the interest in cash amounting to $3,645.95 and gave his note to the

Central Trust Company for $150,000.00, and secured the payment of the same by a pledge of the $250,000.00 Central Brick Company bonds, $45,000.00 in liberty bonds and $30,000.00 in imrovement bonds of the village of Dalton, Illinois. On March 25, 1929, appellant Dowdle, out of his own personal funds and without any promise of reimbursement from anyone, acquired the outstanding preferred stock of the Southern Indiana Clay Products Company at a cost of $18,000.00. On April 15, 1929, for default in payment of the interest due October 1, 1928, the trustees declared the entire principal amount of the bonds, secured by the trust deed, to be due and payable immediately.

During the progress of the trial, it was agreed by and between all of the parties hereto, that certain mechanic's liens and labor preferred claims should be preferred claims over the above claims of all other parties hereto, and it was so adjudged by the lower court, and the total amount thereof being $6,540.48 as is contained in the fifth paragraph of the judgment of the lower court, the validity of which judgment is not in question in this court and is therefore affirmed in all things.

The court's conclusions of law are as follows:

"Conclusion of Law No. 1.

The law is with the Receiver and all other co-crossdefendants adverse to Eldo W. Wood Trustee's cross-complaint and against the cross-complainant Eldo W. Wood, Trustee, and John J. Dowdle on his answer to cross-complaint of Eldo W. Woods, Trustee, to foreclose mortgage.

"Conclusion of Law No. 2.

That the mortgage and the bonds purporting to be secured thereby, set up by the cross-complaint of Eldo W. Wood, Trustee, are each and all invalid; and are not the obligations of the Central Brick Company; and are not liabilities in or against the receivership trust estate in this cause; but are

void, and the receiver is entitled to have such mortgage and bonds cancelled, and the apparent lien of the mortgage declared of no effect; and to have the receivership trust estate released from all liens and claims of such mortgage and the indebtedness purporting to be secured thereby.

"Conclusion of Law No. 3.

That the Receiver and all parties adverse in interest in this action to Eldo W. Wood as Trustee, and to John J. Dowdle are entitled to recover their costs incurred in this proceeding upon all issues concerning the validity of the mortgage and bonds in question, as against said Eldo W. Wood as trustee, and John J. Dowdle.

"Conclusion of Law No. 4.

That all of the property in the Receivership trust, belonging to or pertaining to Central Brick Company, shall be sold and liquidated by the Receiver herein; and that the proceeds derived from such sale and liquidation shall be by said receiver paid out under the order and direction of this court upon and in payment of the liabilities existing and accruing against the trust estate, in the order of priorities as heretofore or hereafter determined by the court; and that such sale and liquidation of assets shall be free and clear of all liens and claims of all creditors and other parties in interest; any liens and claims that would be chargeable to the specific property or assets to be transferred to the proceeds obtained in liquidation in the same order of priority as they would have held against the original tangible funds and assets. This conclusion as to the liquidation of the trust estate to refer primarily to that portion of the estate under the jurisdiction of this court in the State of Indiana; and secondarily to all other property in the trust estate but subject to the further and specific direction of the proper courts having jurisdiction of the trust estate elsewhere."

Appellant Dowdle excepted to each of the four conclusions of law as did the defendant and cross-complainant, Eldo W. Wood, and other defendants. Upon motion of the Citizens Trust Company, receiver of the Central Brick Company, judgment was rendered upon the con-

clusions of law and in conformity therewith. Appellant's motion for a new trial was overruled with proper exceptions. Appellant assigned two reasons in his motion for a new trial: (1) The decision of the court is not sustained by sufficient evidence, and (2) the decision of the court is contrary to law.

Appellant's assignment of errors contains six specifications: First, the overruling of his motion for a new trial, and the other five assignments relate to error in the conclusions of law.

Appellant's first point under his points and authority, urges that the court erred in overruling his motion for a new trial, and under that assignment of error, appellant relies upon his specification in his motion for a new trial, that the decision of the court is not sustained by sufficient evidence for the following reasons:

First, that the property of the Central Brick Company should not have been ordered sold free and clear of all liens prior to the final adjudications thereof, when there was no showing of any necessity for a sale. The record shows, (1) that the lower court did adjudicate the validity of appellant's lien before ordering the sale, and (2) that on January 14, 1931, John J. Dowdle, appellant herein, filed his application to stay the sale of the property ordered by the court, and the sale of the receiver was stayed by this court until final adjudication of appellant's rights under the trust deed, and therefore appellant has not suffered by reason thereof.

The second proposition is that there was valid corporate authority of the Central Brick Company to borrow the consideration for the mortgage, to execute the mortgage and to pledge the bonds secured by the mortgage, and under this proposition, he makes the contention that on February 6, 1298, when the Central Brick Company borrowed the consideration for the mortgage; to wit, $150,000.00 from appellant's assignor, the Central

Brick Company was a *de jure* corporation, or if not a *de jure* corporation, it was at least a *de facto* corporation and its assets are liable for the loan and subject to the lien of the mortgage as fully as though it had been a *de jure* corporation.

The Central Brick Company was organized under the General Corporation Act of the State of Indiana, Acts 1921, and Acts amendatory thereof, Acts 1921 p. 93. This Act constituted a valid law under which the Central Brick Company might have been formed. The evidence shows there was a bona fide attempt to incorporate under that law; articles of incorporation, in due form, were filed with the Secretary of State, which were afterwards approved by him and a certificate of incorporation was duly issued thereon. The articles of incorporation were recorded in the proper records of the county where the principal office of the company was located. There was a meeting of the subscribers to the capital stock on the day designated in the articles of incorporation, at the place designated therein, and there was also a meeting of the board of directors, officers elected and other business transacted at said meeting. There was an actual exercise of corporate powers which are the three requisites of a *de facto* corporation. *Jennings* v. *Dark* (1911), 175 Ind. 332, 92 N. E. 778; *Clark* v. *American Canal Coal Co.* (1905), 165 Ind. 213, 73 N. E. 1083, and cases there cited. It is not necessary, to a proper disposition of this case, to go further and decide the question as to whether there was a *de jure* corporation. It is sufficient that there was at least a *de facto* corporation.

It is contended by the appellee, and was found by the court in its findings, that the bond issue was never authorized by the Central Brick Company; that the Central Brick Company lacked corporate existence, and no authority was ever given to

execute the bonds and mortgage in question. Many technical objections are urged to the corporate existence of the Central Brick Company but they are not supported by the facts in this case. The first objection urged is, that it is set forth in its articles of association, the price per share at which the capital stock was to be sold, but the stock was not so sold. The articles of association specifically set forth the business and property to be taken over by the corporation and recited that, "The company has contracts for and expects to take over . . . the real estate, buildings, machinery and other assets of the following corporations," (Then follows the names of the various companies to be purchased). The facts show, that the options for the three underlying companies were to Joseph L. Buckley but the facts further show that after the Central Brick Company was organized, Mr. Buckley and Mr. Cowles negotiated a loan of $150,000.00 with the Central Trust Company of Chicago, Illinois, for the Central Brick Company, for the very purpose to enable the Central Brick Company to obtain these properties upon which Mr. Buckley held options. That they, as representatives and officers of the Central Brick Company negotiated the actual purchase of these properties and used $132,-000.00 of the $150,000.00 loan to pay a part of the purchase price for the same, and had issued to the various stockholders in the several companies, stock in the new company in exchange and part payment for their stock in their company. It would be disregarding the substance for the mere form to say that Buckley purchased the three underlying companies and then sold them to the Central Brick Company, and that the three underlying companies dealt only with Cowles and Buckley as individuals and not with the Central Brick Company. The evidence shows that all three of these companies regarded the transaction as being with the

Central Brick Company and not with Cowles and Buckley individually, disconnected entirely with the Central Brick Company. The transfer of the stock of the Southern Indiana Clay Products Company and the Huntingburg Dry Press Brick Company to Cowles and Buckley was not regarded by the parties as a completed, independent transaction with these two individuals. They did not understand that they were selling their property to these two men but that the transfer of their stock to Cowles and Buckley was the means adopted, to transfer the properties of these two corporations to the Central Brick Company, and the issuance to Buckley of the 2,400 shares of stock and afterwards the issuance of the certificates of stock, to the stockholders of the three corporations out of the 2,400 shares issued to Buckley (Buckley having surrendered said certificate for that purpose) was also the means of selling the stock in the new corporation and taking therefor the property of the several corporations. In case of the Coshocton Brick Company they transferred their property directly to the Central Brick Company. It is true that all the stock was not sold for cash, but no one contends that the Central Brick Company did not receive par value for the stock issued. We see nothing illegal with such transaction if the parties agree to it.

The next objection urged is that the articles set forth the properties to be taken over by the corporation (including Veedersburg) which was not done. The fact that the Central Brick Company did not purchase all of the individual brick companies which it proposed to do, can in no wise affect the corporate capacity to issue the bonds and execute the mortgage here in question.

The next objection urged is that the articles fixed the number of directors at seven, naming those who were

to manage its affairs until its first annual meeting. At the annual meeting no directors were elected. The facts show that the directors named in the articles met on the day and at the place named therein, they did not formally elect new directors, but those named in the articles continued to function as the board of directors, and did perform the duties of directors, and were at all times recognized by the stockholders as constituting the board of directors. Where there was no election of new directors, the old directors held over until their successors are elected and qualified. *Martin* v. *Board of Trustees* (1930), 199 N. C. 691, 155 S. E. 603; *Tuley* v. *State* (1849), 1 Ind. (Cart.) 500; *Oppenheim* v. *Pittsburgh C. & St. L. R. Co.* (1882), 85 Ind. 471-473; *State ex rel. Carson* v. *Harrison* (1887), 113 Ind. 434-440, 16 N. E. 384; 2 Fletcher Cyclopedia of Corporations (1931) §344; 2 Thompson on Corporations (3rd Ed.) §1181.

Another objection urged by appellees to support the judgment of the lower court relates to the first meeting of the board of directors. The articles of incorporation as well as the by-laws fixed the number of directors at seven, and provided that a majority of the board would constitute a quorum. The facts show and it is supported by the evidence, that at the first meeting of the board of directors, at Crawfordsville, Indiana, on January 23, 1928, there was present in person three members of the board of directors only, the others being present by proxy. It is well settled that a director of a corporation cannot be present and vote or act at a director's meeting by proxy. Fletcher Corporation Vol. 3, p. 3077, §1890; *Lippman* v. *Kehoe Stenograph Co.* (1915), 11 Del. Chancery Report 80, 95 Atl. 895; 14 A. Corpus Juris p. 93, §1856; *Haldeman* v. *Haldeman* (1917), 176 Ky. 635, 197 S. W. 376.

But the minutes of the first board of directors recite that all members were present and these minutes are properly certified by the president and secretary. In addition to this fact, we find that the trust deed recites that the same was properly authorized. We quote from the trust deed itself:

"Whereas, the execution and delivery of this Indenture and the issuance from time to time of the bonds secured hereby, have been authorized and consented to by resolutions duly adopted by the board of directors and by the stockholders of the Company, at meetings of such board of directors and stockholders separately and regularly called and held, and a mortgage or deed of trust securing said bonds, in the form of this Indenture, was submitted to and approved by the stockholders and board of directors of the Company at their respective meetings, and the president or a vice-president and secretary or an assistant secretary of the company were duly authorized at said meetings, on behalf of the Company, as its act and deed and under its corporate seal, to execute and deliver this Indenture to the Trustees; and

Whereas, the holders of more than three-fourths in amount of the outstanding preferred stock of the Company, to wit, the holders of all its outstanding preferred stock, did, prior to the execution of this Indenture, consent in writing to the execution and delivery hereof, and to the issuance from time to time of the bonds secured hereby; and . . ."

Such a recital in a trust deed effectively estops the corporation and those claiming through it from questioning the corporate authority to execute it. *Hartley* v. *Ault Woodenware Co.* (1918), 82 W. Va. 780, 97 S. E. 137; *Manhattan Hardware Co.* v. *Roland* (1889), 128 Pa. St. 110, 18 Atl. 428; *Lowe* v. *Los Angeles Gas Co.* (1914), 24 Cal. App. 367, 141 Pac. 399; 4 Cook on Corporations (3rd Ed.) §2636. In the case of *Hartley* v. *Ault Woodenware Co., supra,* the court used this language:

"The law, everywhere well recognized, is that one is estopped by his deed from contradicting the facts recited therein, and this estoppel operates against all persons claiming by or under him, and there is no exception in favor of corporations."

In the *Manhattan Hardware Co.* v. *Roland, supra,* the court said,

"The mortgage is under the corporate seal, signed by the president and attested by the secretary of the Manhattan Hardware Company. The mortgagee knew that the corporation had power to borrow money upon the bond and mortgage and in the utmost good faith advanced his money to the corporation and accepted the mortgage as security for it. Upon its face the mortgage represented that it was authorized by the directors; and under the circumstances he was not bound to look beyond it."

Had the Central Trust Company as a matter of caution looked beyond the recital in the trust deed for corporate authority for the execution and demanded an exhibition of the minutes of the board of directors, it would have found in the minutes of April 23, 1929, the following:

"There being presented to the board of directors, the form of the Deed of Trust authorized by the Incorporators at their meeting held on January 23, 1928, and approved by the board of directors at their first meeting held on January 23, 1928, a copy of which said mortgage is attached hereto, but not copied on account of its length. Said mortgage was duly approved by the board of directors, and the officers of the Company were authorized to sign the same and to take all necessary steps for the carrying of resolution heretofore adopted into effect, and to provide for the execution, filing and recording of said instruments, and the delivery of the bonds thereby secured, in accordance with the form therein set forth, to the Central Trust Company for registration."

The articles of incorporation expressly authorized the purchase of the underlying companies; the first meeting

of incorporators and stockholders expressly authorized the purchase of them, and the execution of the mortgage; the officers were ordered to proceed to take all necessary steps to effect the purchase. The borrowing of money was necessary, or at least was within their authority to do. The money was borrowed, and placed to the credit of the Central Brick Company. It was paid out for corporate purposes. $132,600.00 was used in acquiring the property now in the hands of the receiver, and the balance was used for legitimate corporate purposes. The Central Brick Company received all the benefits of the loan, executed its trust deed to secure $250,-000.00 of its bonds and pledged them as collateral security. Appellant, in good faith and for value, became the purchaser of these bonds and is now the owner and holder thereof. This action is brought on the equity side of the court, and fundamental rules of equity must be observed. In the case of *Bossert* v. *Geis* (1914), 57 Ind. App. 384, 107 N. E. 95, the court said:

> "Likewise, if warranted by the issues it may be shown that his acts had been ratified by the board of directors, or that the company was estopped to question the validity of his acts by having received and used the money in the payment of the debts of the company. *National State Bank* v. *Sanford Fork etc. Co.* (1901), 157 Ind. 10, 15, 60 N. E. 699; *Elkhart Hydraulic Co.* v. *Turner* (1908), 170 Ind. 455, 84 N. E. 812; *National State Bank* v. *Vigo County Nat. Bank,* 141 Ind. 352, 355, 40 N. E. 799; 2 Thompson, Corporations, . . . 1257, 1515."

*Louisville, etc., R. Co.* v. *Flanagan* (1887), 113 Ind. 488, 493, 14 N. E. 370:

> "Besides, the contract having been fully executed by the plaintiffs, the corporation cannot, while retaining the benefit of it, assert that it had no power to make a contract, the consideration of which it has received. *State Board, etc.* v. *Railway,* 47 Ind. 407, and cases cited; *Chicago, etc. Co.* v. *Derkes,* 103 Ind. 520, 3 N. E. Rep. 239. The rule requiring

the observance of good faith and fair dealing is as applicable to corporations as to individuals."

*Wright* v. *Hughes* (1889), 119 Ind. 324, 330, 21 N. E. 907:

"Like natural persons, corporations must be held to the observance of the recognized principles of common honesty and good faith, and these principles render the doctrine of ultra vires unavailing when its application would accomplish an unjust end, or result in the perpetration of a legal fraud. After a corporation has received the fruits which grow out of the performance of an act ultra vires, and the mischief has all been accomplished, it comes with an ill grace then to assert its want of power to do the act or make the contract, in order to escape the performance of an obligation it has assumed."

As it is put in 3 Thompson on Corporations (3rd Ed.), Section 2071:

"In other words, by retaining the fruits of the unauthorized contract with knowledge of the circumstances which entitle it to its election either to affirm or disaffirm it, the corporation ratifies the contract and makes it good by adoption."

Among the numerous cases that might be cited we refer merely to *National Bank* v. *Sanford* (1901), 157 Ind. 10, 15, 60 N. E. 699; *Bankers* v. *German* (1919), 189 Ind. 311, 323, 126 N. E. 6; *National Bank v. Headrick* (1916), 63 Ind. App. 54, 58, 112 N. E. 559; *Seymour* v. *Viking* (1927), 87 Ind. App. 179, 190, 161 N. E. 389; *Breinig* v. *Sparrow* (1906), 39 Ind. App. 455, 462, 80 N. E. 37; *Bedord* v. *McDonald* (1897), 17 Ind. App. 492, 497, 46 N. E. 1022; *Mt. Pleasant* v. *Watts* (1930), 91 Ind. App. 501, 151 N. E. 7.

The receiver of the Central Brick Company is in no position to repudiate the mortgage and bonds and at the same time claim the property which is the proceeds of that loan. Common rules of honesty and fair dealing would estop a party from doing this. This question was presented to the court of New

York in the case of *Seymour* v. *S. F. C. Ass'n* (1895), 144 N. Y. 133, 39 N. E. 365, and the court said:

"There were some alleged technical irregularities in the issue of the bonds. These represented the purchase price of the land which the corporation bought and kept, and were its promise to pay which it could not justly repudiate. That kind of plunder which holds on to the property but pleads the doctrine of *ultra vires* against the obligation to pay for it, has no recognition or support in the law of this state."

It is also urged that at the time the mortgage was executed, May 23, 1928, Cowles and Buckley, directors of the Central Brick Company, were sureties upon the $150,000.00 demand note to the Central Trust Company and therefore the trust deed constituted a preference in violation of section 21 of the 1921 Corporation Act. (§4844, Burns Ann. St. 1926). Section 21, reads as follows:

"No corporation organized hereunder shall have power to prefer any creditor where any director of such corporation is a surety on the indebtedness preferred, or has been a surety on such indebtedness within four months prior to such preference."

Preference of a creditor is entirely valid at common law, and as the statute is in derogation of the common law it should be strictly construed. *Adams Co.* v. *Federal Glass Co.* (1913), 180 Ind. 576, 103 N. E. 414; *Hammel* v. *State* (1926), 198 Ind. 45, 152 N. E. 161; *Humphrey* v. *City National Bank* (1921), 190 Ind. 293, 130 N. E. 273.

When the debt is created contemporaneously with the giving of the security, the creditor is not preferred; an antecedent debt is necessary for a preference.

". . . In the administration of the Bankrupt Law in England this subject has frequently come before the courts, who have uniformly held that advances may be made in good

faith to a debtor to carry on his business, no matter what his condition may be, and that the party making these advances can lawfully take securities at the time for their repayment. And the decisions in this country are to the same effect."

*Tiffany* v. *Boatmen's Savings Inst.* (1873), 18 Wall. 375; *Harris* v. *Randolph County Bank* (1901), 157 Ind. 120, 60 N. E. 1025; 8 Thompson on Corporations (3rd Ed.) §6161; *In re Busby* (1903), 124 Fed. 469; *In re Bartlett* (1909), 172 Fed. 679.

There is another reason why the giving of the trust deed was not preference as to the parties raising the question here. At the time the deed was executed there was no other creditors and only creditors at the time of the alleged preference can object, unless a fraudulent intent is proven. *Harback* v. *Hill* (1884), 112 U. S. 144, 28 L. Ed. 670; *Wood* v. *National City Bank* (1928), 24 Fed. (2d) 661; *Phillips* v. *Carter* (1920), 266 Fed. 444; *Eckhart* v. *Burrell Mfg. Co.* (1908), 236 Ill. 134, 86 N. E. 199; *Black* v. *Ellis* (1910), 197 N. Y. 402. While the trust deed here in question was not in fact executed till May 23, 1928, it was given in pursuance to an agreement to mortgage at the time the money was loaned, to wit: Feb. 6, 1928, and the property acquired, which agreement created a mortgage in equity, and no creditor of the corporation whose claim antedated the legal mortgage was any more prejudiced by the execution of the legal mortgage than he had been while the equitable mortgage existed. (See cases last above cited), also *Harris* v. *Randolph County Bank, supra; Irwin's Bank* v. *Fletcher, etc.* (1924), 195 Ind. 669, 145 N. E. 869. We therefore hold that the trust deed is not void on the ground of a preference.

Appellee says that appellant is in no position to question the judgment of the lower court as to the validity

of the bonds and trust deed, for he says that neither the answer filed by him nor the amended petition of the receiver to sell, presents that issue, that only the trustee Wood could present the question on appeal and as he did not appeal, the question is not before us for consideration.

In this, we think appellee is in error. The amended petition of the receiver to sell, alleges the execution of the bonds and trust deed, and among the liabilities and debts of the Central Brick Company, which he makes an exhibit to his petition, he lists the $150,000.00, borrowed from the Central Trust Company of Illinois. One of the purposes of the receiver in his petition to sell was to determine the validity of the bonds and trust deed, and all other asserted claims, and to determine the priority of them and to adjudicate the validity of the many claims and to quiet title to all asserted claims which might be adjudged invalid. Appellant, in his answer to the amended petition to sell, asserts title to the bonds, as well as the validity of the trust deed, and asserted that the bonds, secured by the trust deed constituted a first lien upon all the property of the Central Brick Company. The court found and adjudged that the bonds and trust deed were invalid and should be surrendered and cancelled. We think the pleadings to which appellant was a party squarely tendered the issue as to the validity of the bond and trust deed, and as the judgment was adverse to appellant, he had the right to present the question to this court on appeal.

The above disposes of the questions seriously urged by appellees, except that the Coshocton interests urge that by reason of fraud set up in their answer to the receiver's amended petition to sell, they should be declared the holders of a vendor's lien upon the property of the Central Brick Company, and especially the property located at Coshocton, Ohio. The

receiver of the Central Brick Company in his petition to sell and the court in its decree does not attempt to sell the property at Coshocton, nor to adjudicate the question of fraud insofar as it affects the Ohio property. There is no basis for a vendor's lien by the Coshocton Co. on the Indiana property and we so hold. No personal judgment is sought by appellant against any of them. Our view of this question is, that the existence of a vendor's lien by the Coshocton interests upon the property in Ohio by reason of alleged fraud is a question that should be litigated in the courts of that state and not here.

All the parties hereto by their respective pleadings have asked that the receiver make sale of the assets of the Central Brick Company located in Indiana, and that it would be to the best interest of all concerned that the sale be made by the receiver as prayed for in his amended petition and such an order we think should be made.

We conclude that the decision of the lower court is not sustained by sufficient evidence and is therefore contrary to law. That the court erred in its first, second, third, and fourth conclusions of law. It would serve no useful purpose to order a new trial, as all the facts are fully before the court. The judgment of the lower court is reversed with instructions to the trial court to restate its conclusions of law in conformity to this opinion and render judgment thereon and in accordance therewith.